770 F.2d 166
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HUGH MILO HAYNES, DEBTOR, LARRY STEWART, TRUSTEE PLAINTIFFS-APPELLEES,
v.
TENNESSEE WHOLESALE DRUG COMPANY, INC., DEFENDANT-APPELLANT.
 NO. 84-5648
 United States Court of Appeals, Sixth Circuit.
 7/25/85
 
 M.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: MARTIN and KRUPANSKY, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Tennessee Wholesale Drug Company, Inc. (TWDC) appealed this district court judgment which determined that TWDC had released its lien on certain real property here in question in exchange for a quitclaim deed to that property.
 
 
 2
 The facts are basically undisputed. Hugh Milo Haynes owned approximately sixty acres of real property located in Perry County, Tennessee. In 1976, Haynes signed a promissory note to TWDC in the amount of $45,000 secured by a deed of trust[1] on the aforementioned real property. This deed of trust was duly recorded. In March of 1979, Haynes signed a new note to TWDC for a $110,000 loan to Haynes and Haynes Pharmacy, Inc. (the Corporation), a corporation controlled by Haynes. The new note consolidated the $45,000 indebtedness covered by the 1976 note and deed of trust with an additional loan. This note was also secured by the Perry County property. The 1979 note was signed by Haynes both individually and as president of the Corporation.
 
 
 3
 On March 26, 1981, Haynes and TWDC entered into an agreement under which TWDC released Haynes from all personal liability on the 1976 and 1979 notes in exchange for a quitclaim deed to the Perry County property.
 
 
 4
 The quitclaim deed was delivered to TWDC but TWDC failed to record it. Moreover, TWDC neglected to conduct a title search which would have disclosed the existence of another lien of record against the property in favor of Atlantic Consumer Services of Tennessee, Inc. (Atlantic).[2]
 
 
 5
 Haynes subsequently declared bankruptcy and the trustee in bankruptcy for Haynes' estate initiated an adversary proceeding to sell the Perry County property free and clear of TWDC's unrecorded quitclaim deed. The bankruptcy court determined that when TWDC accepted the quitclaim deed, it released its deed of trust on the property. The result of this disposition accorded the trustee, pursuant to the trustee's avoiding power under 11 U.S.C. Sec. 544, a priority position over TWDC to the property. The bankruptcy court's decision was appealed by TWDC and the district court affirmed.
 
 
 6
 On appeal to this court, TWDC argued that even though it released Haynes from personal liability in exchange for the quitclaim deed, it nevertheless retained a lien against the property because it also secured the indebtedness of the Corporation. TWDC urged that the release agreement did not intend to release the deed of trust, but only Haynes' personal liability.
 
 
 7
 Under Tennessee law, the intention of the parties to a deed of trust is discerned from the plainly expressed language of the instrument itself. Wright v. Lincoln County Bank, 62 Tenn.App.560, 465 S.W.2d 877 (1970).
 
 
 8
 The 1979 deed of trust incorporated the following language:
 
 
 9
 But this conveyance is made in trust for the following uses and trusts and for no other purpose, to wit:
 
 
 10
 To secure the payment of and under a Collateral Promissory Note made by the undersigned of even date herewith in the sum of One Hundred Ten Thousand Dollars ($110,000.00) plus interest at ten percent (10%) per annum, payable on demand to Tennessee Wholesale Drug Company, Inc. . . .
 
 
 11
 Now, if I, Hugh M. Haynes, Jr. shall pay the sum aforesaid when due, according to the terms of said note, then this instrument shall be of no further force or effect.
 
 
 12
 The 'undersigned' referenced in the deed of trust was Haynes; no other person signed the deed of trust and it nowhere stated that it was to secure the debt of any other individual, firm or corporation.
 
 
 13
 The next document evincing the intent of the parties was the March, 1981 release agreement, which provided in pertinent part:
 
 
 14
 Whereas, Tennessee Wholesale Drug Company, Inc. has agreed to release Hugh M. Haynes from any and all liability owed to Tennessee Wholesale Drug Company, Inc. . . .
 
 
 15
 It is Further Agreed that upon the execution and delivery of the above-mentioned Quitclaim Deed, any and all indebtedness which is currently due and owing, or which may become due and owing from Hugh M. Haynes to Tennessee Wholesale Drug Company, Inc. under the indemnification agreement, guarantee, security agreement, or any other documents relating to the indebtedness of Haynes Pharmacy, Inc. to Tennessee Wholesale Drug Company, Inc. be released and satisfied in full, . . .
 
 
 16
 The concluding paragraph of the agreement clearly reflects that upon execution and delivery of the quitclaim deed Haynes would be relieved of liability from any indebtedness to TWDC and that his liability to pay the collateral promissory note was thus satisfied. Therefore, pursuant to the final clause of the 1979 deed of trust:
 
 
 17
 Now, if I, Hugh M. Haynes, Jr. shall pay the sum aforesaid when due, according to the terms of said note, then this instrument shall be of no further force or effect.
 
 
 18
 These documents reveal that the intent of both Haynes and TWDC was to extinguish all of Haynes' obligations to TWDC and void the deed of trust upon delivery of the executed quit claim deed to the property. Simply stated, TWDC wanted the property and Haynes wanted to be free of his financial obligations to TWDC. Thus, the district court's conclusion that TWDC released its mortgage on the property in exchange for the quitclaim deed was not erroneous.
 
 
 19
 TWDC's final assertion that equity demands that its interests be given priority over those of the trustee overlooks the fact that TWDC was remiss in protecting itself by recording the deed and conducting a title search. TWDC's misfortune was due to its own dereliction and, as such, is not a matter of equity.
 
 
 20
 For the foregoing reasons, the decision of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The term 'deed of trust' is used by the parties as well as by the Tennessee courts. It appears that it is synonymous with the term mortgage
 
 
 [2]
 The record does not disclose the exact date on which Atlantic recorded this lien. For purposes of this opinion, it must be assumed that it was recorded prior to Haynes quitclaiming the property to TWDC