# MURDOCK ACCEPTANCE CORPORATION, Complainant-Appellant, v. HENRY M. JONES and CORA J. JONES, Defendants-Appellees.—362 S. W. (2d) 266.

Western Section. June 30, 1961.

Certiorari Denied by Supreme Court September 6, 1961.

432

Charles C. Burch, Memphis, for appellant.

Thomas J. Griffin, Memphis, for appellees.

CARNEY, J. The Chancellor entered judgment in favor of Murdock Acceptance Corporation against the defendant, Henry M. Jones, in the amount of $8,970.90. However, the Chancellor held that only $472.15 of this indebtedness was secured by a deed of trust executed by Jones and wife. Murdock insisted that all of its indebtedness against Henry M. Jones was secured by the deed of trust and has brought this appeal from the Chancellor's decree.

The deed of trust was executed on November 18, 1954, by Henry M. Jones and wife, Cora J. Jones, in favor of Kensinger Acceptance Corporation and conveyed in trust a house and lot in Memphis, Tennessee, owned by them as tenants by the entireties. The deed of trust and several notes executed by Mr. Jones were later assigned to Murdock Acceptance Corporation by Kensinger Acceptance Corporation.

The determinative question on this appeal is the interpretation and construction of the following provision of said deed of trust:

"FOR THE PURPOSE OF SECURING the payment of the following indebtedness to _____
Kensinger Acceptance Corporation
or the owner thereof, viz: $5,000.00, together with any and all other indebtedness now or at any time due by the undersigned to the said Kensinger Acceptance Corporation
Kensinger Acceptance Corporation
Henry M. Jones and wife, Cora J. Jones
_____ hereby, bargain, sell, convey and confirm unto _____
Wilbur Fair
as Trustee * * *"

At the time the deed of trust was executed by Henry M. Jones and wife they were not indebted to the Kensinger Acceptance Corporation in any amount but Mr. Jones, a used car dealer, had made arrangements with Kensinger to finance him in the purchase and sale of used cars. It is admitted that the $5,000.00 indebtedness mentioned in the deed of trust referred to credit which Kensinger had agreed to furnish Mr. Jones in financing his automobile business.

After the execution of the deed of trust Mr. Jones began doing business with Kensinger. The practice was for Kensinger to advance him funds with which to purchase second hand cars. For each car purchased Mr. Jones executed a separate promissory note secured by a trust receipt on the newly purchased automobile. Mr. Jones calls this floor plan financing.

When an automobile was sold by Mr. Jones the trust receipt and promissory note secured thereby were cancelled in one of two ways: (1) By the payment in cash if Mr. Jones sold for cash or financed through some other agency, or (2) by the assignment and substitution of the conditional sales contract which Mr. Jones received in payment of the automobile if the same was financed through Kensinger.

The conditional sales contracts were assigned by Jones to Kensinger under "a repurchase agreement" commonly used in the automobile business. Upon default in payment of the conditional sales contract Kensinger was obligated to repossess the automobile. Jones was obligated either to repurchase the conditional sales contract from Kensinger or to repurchase the automobile itself in case of repossession and sale by Kensinger. In many instances Jones again became the owner of the used automobiles as a result of the repurchase agreement.

He repaid Kensinger under the repurchase agreement by putting the car back under the floor plan and executing a new note and new trust receipt payable to Kensinger. Many of the cars when repossessed by Kensinger or Jones were in poor condition and worth considerably less than the indebtedness due and owing against them. When the cars were finally sold or junked Mr. Jones had sustained a great loss. The Master found that he owed a principal debt to Kensinger of $6,744.96. Interest from May 21, 1957, plus 15% attorneys fees made a grand total of $8,970.90 for which judgment was rendered.

The complainant, Murdock Acceptance Corporation, as assignee of Kensinger brought its original bill seeking a judgment against Mr. Jones and also seeking a foreclosure of the deed of trust to satisfy said indebtedness. The defendants, Mr. and Mrs. Jones, in their separate answers admitted that Mr. Jones was indebted to Kensinger and/or complainant Murdock as a result of the financing by Kensinger of Mr. Jones' used car business. However, they denied that the indebtedness was secured by the deed of trust; averring that the deed of trust secured only two separate types of indebtednesses: (1) Indebtedness up to $5,000.00 which might become due and

owing by Mr. Jones arising out of the financing by Kinsinger of his purchase of used cars at wholesale for resale at retail and (2) any indebtedness which Mr. and Mrs. Jones might owe Kensinger as a joint liability.

Upon a reference the Master found in favor of the defendants. Question No. 3 was as follows:

"Does the trust deed aforesaid secure the indebtedness of:

"(a) Henry Jones, or

"(b) Cora Jones, or

"(c) Henry and Cora Jones, jointly?
"Finding

"It is found that said deed secures the wholesale indebtedness of (a) Henry Jones"

It was admitted that the only indebtedness due and owing to Kensinger was by Henry Jones individually and that neither Cora Jones individually nor Henry and Cora Jones jointly owed any indebtedness to Kensinger.

The Master further found that of all the indebtedness due and owing by Henry Jones to Kensinger only one note represented an indebtedness arising out of the financing of automobiles purchased by Jones at wholesale for resale. The principal amount of this note was $355.00 which together with accrued interest and attorneys fees amounted to $472.15. The Master reported that this was the only item of indebtedness of Jones to Kensinger which was secured by the trust and that the remainder of the indebtedness arose out of Jones' liability under the repurchase agreements. The Master's report was unexcepted to and confirmed by the Chancellor.

■ A. concurrent finding of fact by the Master and the Chancellor is binding upon this court. However, we agree with the insistence of appellant that a concurrent finding of law or of a mixed question of law and fact is not conclusive but subject to review on appeal. Gibsons Suits in Chancery, 5th Edition, Section 664.

All five of the assignments of error raise the one question as to whether the Chancellor and the Master correctly construed the portion of the deed of trust quoted above, to wit: "5,000.00, together with any and all other indebtednesses now or at any time due by the undersigned to the said Kensinger Acceptance Corporation."

We think the assignments of error must be sustained under the authority of Petty v. Sloan, 1955, 197 Tenn. 630, 277 S. W. (2d) 355. In that case the Supreme Court construed the language of a contract between certain physicians as lessees and the trustees of the Smith County Hospital as lessors. Only one sentence in the contract was in dispute which we copy as follows:

"Lessees agree to cooperate with all reputable doctors and especially the doctors of Smith County in the operation of said hospital and to make available the facilities of said hospital for the treatment of their patients."

The lessee doctors, in their answer, stated that all the parties to the suit intended that the word "treatment" did not include surgical operations. The case was heard upon bill and answer and the Chancellor found in favor of the defendants primarily because the plaintiffs by setting the case for hearing on bill and answer admitted the facts set out in the answer as being true. Our Tennes-

see Supreme Court reversed. From said opinion we quote as follows:

" * * * The question for us to answer is: Does the language 'to cooperate with all reputable doctors of Smith County in the operation of said hospital and to make available the facilities of said hospital for treatment of their patients' need outside, extraneous evidence for one to understand what is meant by the use of the words therein used? Is this quoted language ambiguous?

"Our answer to the question is no. It seems to us that the language is plain, simple and unambiguous and this being true 'it is the function of a court to intrepret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves.' Smithart v. John Hancock Mutual Life Ins. Co., 167 Tenn. 513, 525, 71 S. W. (2d) 1059, 1063.

"In reading and studying this contract we of course must construe it with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used. Southern Pub. Ass'n v. Clements Paper Co., 139 Tenn. 429, 432, 201 S. W. 745, L. R. A. 1918 D, 580.

*    *    *    *    *    *

"We in considering the contract find that it does not contain technical expressions. The contract, it seems to us is expressed in non-technical language

and subject to be, and capable of being, read and understood by the citizens and taxpayers of the County. This being true it certainly seems that in construing the meaning of this language that the word 'treatment' should be given its ordinary meaning.

\* \* \* \* \* \*

"Any restricted meaning would have to be set forth at the time the contract is entered into, otherwise the contract would have to be taken as is, subject to the common, ordinary meaning of the word there used. The court must take this as the intention of the parties when the contract was made. If such was not their intention after the contract was drawn and signed they should have then done something else about it. After the contract was entered into the court will not admit evidence dehors the contract to say that the parties meant this or that or intended this or that by the use of certain words of ordinary accepted meaning. Words may be given any meaning the parties desire but when a word is given a meaning other than its ordinary meaning it should be so stated in the contract, otherwise the ordinary meaning of the word will be ascribed to it.

"Of course it is a well settled, and practically universally recognized principle, that the cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles. Thompson v. Exchange Bldg. Co., 157 Tenn. 275, 8 S. W. (2d) 489, 60 A. L. R. 693; Laue v. Grand Fraternity, 132 Tenn. 235, 177 S. W. 941, L. R. A. 1915F, 1056, annotated cases 1917A, 376

and others. In getting at this intention we of course do not determine what the state of the mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written. Of course it is a well recognized principle that the ascertainment of such intention is a question of law or a judicial function for us to perform when the language is plain, simple and unambiguous.''

■ In the case at bar there was no contention that the language used in the deed of trust was a result of fraud or mistake. The language seems plain and unambiguous. We think the average layman would understand it to mean that all indebtedness owed to Kensinger by either or both of the signers of the deed of trust would be secured by the deed of trust. The question of the statute of limitations as it might apply to so-called ''open-end'' deeds of trust is not involved in this case.

The defendants cite the case of First Bank & Trust Company of Ottumwa v. Welch, 219 Iowa 318, 258 N. W. 96, 97-98. The language from the Welch case quoted by defendants seems to support the contention of the defendants and the decision of the Chancellor. We think Tennessee law is contrary and we should not follow the Welch case.

To limit the security under the trust to indebtednesses of Mr. Jones arising only from the wholesale financing and to joint debts of Mr. and Mrs. Jones, they should have had the deed of trust so provide in plain language. To permit these defendants to prove that ''any and all other indebtednesses now or at any time due by the undersigned'' actually meant only two special types of

indebtednesses would jeopardize other so-called open-end deeds of trust and would not be in the public interest.

Wherefore, we feel constrained to reverse the action of the lower court. A decree will be entered modifying the decree below and providing that all of the indebtedness due and owing by Mr. Jones to Kensinger and/or Murdock is secured under the terms of the deed of trust. The costs will be taxed against the appellees, Mr. and Mrs. Jones. The cause will be remanded for final action including foreclosure of the trust if necessary.

Avery, P.J. (W.S.), and Bejach, J., concur.