M. H. WRIGHT, Complainant-Appellant, v. THE
LINCOLN COUNTY BANK, et al., Defendants-
Appellees. —465 S.W.2d 877.

Middle Section. October 30, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

Charles A. Trost, of Courtney, Trost, Leech & Hardin, Columbia, for complainant-appellant.

Arthur E. Simms, Jr., of Simms & Simms, Fayetteville, for defendants-appellees.

PURYEAR, J. This appeal involves construction and application of an "open-end" provision for future advancements contained in a deed of trust executed by the complainant and others to secure payment of an indebtedness to the defendant, Lincoln County Bank, to which we will refer herein as "the bank."

The salient facts of the case, as we find them to be, are as follows:

At the time of the transaction in question here the complainant and his two brothers, Carl and Jesse Wright, owned, as tenants in common, a tract or parcel of land in the Seventeenth Civil District of Lincoln County, Tennessee, upon which tract of land the complainant, his wife, and his two brothers, Carl and Jesse, made their home.

At that time, and for a period of time prior thereto, Carl was engaged in the insurance business in Ardmore, Tennessee, under the name of Ardmore Insurance Agency. Eunice Wright, wife of the complainant, worked as secretary for this insurance agency. The complainant was an independent insurance adjuster, engaged in adjusting claims for several companies, including companies represented by Ardmore Insurance Agency. At odd times, complainant also did some work for the Ardmore Insurance Agency, for which he was paid a small salary.

For some time prior to the transaction involved here, the Ardmore Insurance Agency had been losing ground financially and the three Wright brothers were indebted to First National Bank of Pulaski, Tennessee, which indebtedness was secured by deed of trust on their home place. The original amount of this indebtedness was $8,000.00, but the amount due thereon at the time of the transaction in question here does not appear from the proof.

At some time about February 1, 1965, the three brothers obtained a loan from the defendant bank for the purpose of paying the balance due on the indebtedness to First National Bank of Pulaski, and on February 1, 1965, these three brothers, Jesse B. Wright, Carl Wright, M. H. Wright and wife, Eunice B. Wright, executed a note to the defendant bank in the principal sum of $8,000.00 and on that same date they executed a deed of trust conveying the home place of ten acres to J. D. Pylant, as Trustee, for the purpose of securing payment of said indebtedness. This deed of trust was executed on a printed form in which the blanks were filled in with a

typewriter and the security provision of such deed of trust is as follows:

"To secure the full, prompt and final payment of any and all indebtedness, principal, interest, attorney's fee and costs, as may be provided in instruments evidencing such indebtednesses, now or hereafter owing, directly or indirectly, or, as indorser or security for others, to Lincoln County Bank, Fayetteville, Tennessee, its successors and assigns, by the undersigned, or either of them, and specifically, but not limited to, for the following purpose, to-wit:

To secure the payment of our joint promissory note of even date herewith and any extension or renewals thereof in the amount of $8,000.00 payable to the order of Lincoln County Bank, Fayetteville, Tennessee in five (5) equal annual installments of $1600.00 each beginning February 1, 1966, and a $1600.00 installment being due and payable on or before February 1, of each and every consecutive year thereafter until paid in full, with interest from date at 6% per annum and the interest on the entire unpaid *principle* balance being due and payable on each installment payment date."

(Rec. p. 117)

The first paragraph of the above quoted language is printed in the deed of trust and the second paragraph of same is typewritten. This deed of trust was signed by the grantors therein before Mabron Lewter, Notary Public, at a hardware store in Ardmore, Tennessee.

At the time this loan was closed, a checking account was opened at the bank in the name of Ardmore Insurance Agency and an authorized signature card was signed

by Carl Wright, Eunice Wright, Betty Ryer and the complainant.

At some time between February 3, 1965, and March 8, 1965, Carl Wright borrowed an additional $4,000.00 from the bank and repaid it. This loan is not in question here and therefore we need not make any further reference to it.

Thereafter, on or about March 8, 1965, Carl borrowed another $8,000.00 from the bank and executed a note dated March 8, 1965, due thirty days after date, which note is signed as follows: "Ardmore Insurance Agency Carl Wright."

The entire amount of $8,000.00 advanced by the bank at the time this second $8,000.00 note was executed was deposited in the checking account of Ardmore Insurance Agency.

Default was made in payment of both $8,000.00 notes and when demand for payment therefor was made by the bank, the complainant insisted that the second $8,000.00 note was not secured by the aforementioned deed of trust and therefore, he tendered to the bank the sum of $6,-784.00, which he admitted was due upon the first $8,000.00 note, but the bank refused to accept this payment except in partial satisfaction of the indebtedness which it deemed to be secured by such deed of trust which, according to the bank's insistence, included the second $8,000.00 note.

Upon the bank refusing to accept this tender of payment, except in partial satisfaction, complainant filed suit in Chancery Court of Lincoln County, tendering said

sum of $6,784.00 and seeking to remove the deed of trust as an encumbrance on the property described therein.

After this suit was filed, foreclosure proceedings were instituted by the bank and then an amended and supplemental bill was filed by complainant joining J. D. Pylant, Trustee, as a defendant and enjoining foreclosure of the deed of trust. Neither Carl nor Jesse Wright was joined as a party to the suit.

Upon filing of said amended and supplemental bill, a temporary injunction was granted enjoining the foreclosure of the deed of trust. After the defendants, Lincoln County Bank and J. D. Pylant, Trustee, filed their answer to the original and also the amended and supplemental bill, the case was tried before Chancellor Templeton upon oral proof and documentary evidence on October 14, 1969.

As a result of said trial, the Chancellor concluded that the assailed provision in the deed of trust was not contrary to law or against public policy and that it secured the whole debt, that is, both of the notes in the sum of $8,000.00 each, whereupon, the complainant's suit was dismissed and the injunction dissolved. Neither Carl nor Jesse Wright testified at the trial.

After a petition to rehear was filed and overruled, the complainant prayed and perfected his appeal to this Court, in which he appealed from the decree dismissing his bills and has filed two assignments of error as follows:

### I.

"The Honorable Chancellor erred in dismissing the Original and Amended Bill filed by Appellant.

## II.

The Honorable Chancellor erred in ruling as a matter of law that Appellant's interest in the real estate conveyed by the deed of trust executed by Appellant and others on February 1, 1965, secured payment of the note in the principal amount of $8,000.00 executed without Appellant's knowledge or consent by his cotenant on March 8, 1965.''

After considering all of the evidence in this case, we have concluded that the Chancellor reached a correct result.

The two assignments of error actually present only one issue for determination by this Court:

Is the undivided interest of complainant in the property described in the deed of trust subject to the provisions thereof as security for payment of the second $8,000.00 note executed by Carl Wright?

 Validity of the general principle of executing a deed of trust to secure repayment of future advances was affirmed in Tennessee in the early case of McGavock v. Deery, et al. (1860), 41 Tenn. 265, 266, and later reaffirmed in the comparatively recent case of Murdock Acceptance Corp. v. Jones (1961), 50 Tenn.App. 431, 362 S.W.2d 266.

Counsel for complainant insists that the McGavock and Murdock cases are distinguishable from the case at bar and we agree that the facts of those cases are somewhat different from the facts in the case at bar but the principle involved is the same. In the McGavock case the Supreme Court settled the question by saying, in effect,

that such a conveyance to secure future advances is valid when entered into fairly and in good faith.

In Murdock, this Court referred to such an instrument as an "open-end" deed of trust and found that the language used in the instrument under consideration there was plain and unambiguous; that the average layman would understand it to mean that all of the indebtedness owed by either or both of the signers of the deed of trust would be secured thereby.

Complainant admits that he read the entire deed of trust before signing it but says that he didn't understand it was executed to secure anything except the $8,000.00 note executed simultaneously with the deed of trust. The evidence shows that complainant, at the time of the transaction in question, was 57 years of age and of average intelligence and, to paraphrase the language used by this Court in Murdock, supra, we think the average layman would understand the language used in the deed of trust to mean that all the indebtedness contracted at the time same was executed and any future loans made by the bank to either or all of the signers of such deed of trust, would be secured thereby.

We believe the evidence conclusively shows that the bank relied upon the security of its deed of trust when it advanced the loan funds for the second $8,000.00 note. This is shown by the following testimony of the bank's president, J. D. Pylant:

"Q. How were these funds handled?

A. Well, Mr. Carl Wright, after a lengthy conversation, I told him to come on up and I would make the loan to him for thirty days. And he came up and got

the money, signed a note, and he said, asked me at that time. 'Do you want me to carry this out and get the rest of them to sign it'? I said, 'No, sir, I don't think that's necessary because my blanket clause in the Trust Deed would provide for that additional signatures.' ''

(Rec. p. 59)

Upon trial of the case, the bank made an unsuccessful attempt to show that complainant was a partner in the Ardmore Insurance Agency but we conclude that it makes no difference whether he was a partner or not, his interest described in the deed of trust is bound by the plain language thereof as security for the second, as well as the first, $8,000.00 note.

It appears that the complainant entered into a harsh contract and therefore, our sympathies are with him, but we are not at liberty to set aside such contract or hold that it is void, since there is no evidence of fraud or undue influence.

From the evidence in the case we cannot possibly reach the conclusion that complainant did not intend for his interest in the property to be subjected to payment of an indebtedness which was created by either of his brothers without his consent or knowledge.

To thus hold would be to disregard the plain and unambiguous language of the deed of trust that the entire property was pledged to secure future debts to the bank contracted by ''* * * *the undersigned or either of them. * * *''

We must consider the intention of the parties to the deed of trust to be what the plain language therein de-

clared it to be. It has been held in many of our cases, including Guardian Life Ins. Co. v. Richardson (1939), 23 Tenn.App. 194, 129 S.W.2d 1107, that contracts must be construed according to sense and meaning of terms used by the parties, and if such terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense.

In Petty v. Sloan (1955), 197 Tenn.630, 277 S.W.2d 355, the Supreme Court said it is the function of a Court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought to be harsh and unjust.

Counsel for complainant cites First v. Byrne (Iowa) (1947), 238 Iowa 712, 28 N.W.2d 509, 172 A.L.R. 1072, in support of his argument that the provision in the deed of trust to secure future debts only pledges his interest in the realty as security for such future debts as may be incurred with his knowledge and consent.

The Iowa Court held to this effect in that case where the language contained in the mortgage under consideration was similar to that contained in the deed of trust under consideration here. Specifically, the language under consideration in that case was as follows:

"It is further expressly agreed that this mortgage shall stand as security for any other indebtedness, direct or contingent, that the mortgagee may now hold or in the future during the life of this mortgage acquired against the said mortgagors or either or any of them."

The indebtedness which was challenged in that case was one which only one of the mortgagors owed to the

mortgagee before the mortgage in question was executed and was probably barred by the statute of limitations, but sought to be included in the mortgage by execution of a new obligation.

In the Iowa Court's opinion the challenged indebtedness is described in the following language:

"It appears from the evidence this note of defendant M. F. First to his father, given two days before commencement of suit, represented a debt contracted November 9, 1926. On that date plaintiff paid his son's share of the purchase price of the premises later covered by the mortgage in suit. The indebtedness had never been acknowledged in, or reduced to, writing until the execution of the note May 8, 1946, and no payments had ever been made on it. Defendant Byrne had no knowledge of it when the mortgage was given. Defendant First admitted on cross-examination that he signed the note knowing the foreclosure suit was to be brought and said that was the purpose of signing it. Plaintiff did not deny this." Supra, 28 N.W.2d at p. 510, pp. 1074, 1075.

The Iowa Court observed that there was an element of bad faith in the transaction and this was, undoubtedly, considered by the Court in arriving at its conclusion.

We cannot apply the reasoning of the Iowa Court to the facts of the instant case, since the language in question here appears to have clearly included such debts as the second $8,000.00 note here involved. Moreover, we do not consider the rule of construction followed in the Iowa case as consistent with the law of Tennessee.

Instead, we consider it our duty to follow the reasoning of this Court in Murdock, supra, to the effect that

it is a well recognized principle that the ascertainment of intention of the parties is a question of law or judicial function for us to perform when the language is plain, simple and unambiguous.

The assignments of error are respectfully overruled and the decree of the trial Court is affirmed. The complainant will pay all of the costs of this appeal.

Shriyer, P. J. (M.S.), and Todd, J., concur.