ELSIE MARIE RICHARDSON and )
BRIDGET DENYSE RICHARDSON, )
)
    Plaintiffs/Appellants, )
)    Appeal No.
)    01-A-01-9704-CH-00169
VS. )
)    Bedford Chancery
)    No. 10,556
JIMMIE LEE RICHARDSON, )
)
    Defendant/Appellee. )

**FILED**

**December 12, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF BEDFORD COUNTY
AT SHELBYVILLE, TENNESSEE

THE HONORABLE TYRUS H. COBB, CHANCELLOR

DONALD M. BULLOCH, JR.
FRANK M. FLY
BULLOCK, FLY & MCFARLIN
301 North Spring Street
P. O. Box 398
Murfreesboro, TN 37133-0398
    Attorneys for Plaintiffs/Appellants

C. KELLY WILSON
WILSON & WILSON
200 East Depot Street
Shelbyville, Tennessee 37160
    Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

This case encompasses three proceedings involving child support in the Chancery Court of Bedford County, and the orders resulting from those proceedings. The first order, issued in 1980, granted the wife a divorce and gave her custody of the parties' minor child. The husband was directed to pay $400 per month in child support. One-half of that amount was to be paid to the mother, and the other half was to be deposited into a trust fund for the benefit of the child.

The second order, issued in 1987, reduced the husband's child support obligation to $200 per month, but made no mention of the trust. The third order was issued in 1996, after the wife petitioned the trial court to compel the husband to fund the trust. The court held that its 1987 order had the effect of terminating the husband's obligation to the trust. We affirm the trial court.

I.

On August 1, 1980, the trial court granted Elsie Marie Richardson a divorce from Jimmie Lee Richardson on the ground of cruel and inhuman conduct. The parties' minor child was three years old at the time. The divorce decree adopted the parties' agreement on child support, visitation and division of marital property. The clause in the final decree that deals with child support reads as follows:

> 1. The defendant is to pay the plaintiff $50.00 per week child support until such time as he has paid off the remaining payments due and owing on the plaintiff's car. At that time the defendant is to pay the Law Offices of John Norton $200.00 on the 1st and then on the 15th of each month. From each $200.00 payment $100.00 is to be forwarded to the Plaintiff and the other $100.00 is to be forwarded to the Bedford County Bank as Trustee for the use and benefit of the minor child of the parties, Bridgette Denyse Richardson. The Trust Agreement under which the said Trustee will disburse said funds will be drafted pursuant to agreement between counsel of record. The Defendant is also to maintain health insurance on said child.

A trust agreement was drafted in accordance with the decree, and was signed by Mr. Richardson on December 29, 1981. On January 12, 1982, Mr. Richardson made his first payment to John Norton. Mr. Norton forwarded the money in accordance with the orders of the court until May 15, 1984. Mr. Richardson testified that on that date he went to Mr. Norton's office to present his check, and he was told by the attorney's secretary that Mr. Norton had been fired by Mrs. Richardson. He asked what he was supposed to do, and was allegedly told "someone will tell you later."

In 1986, the Department of Human Services petitioned the court on behalf of Mrs. Richardson to hold Mr. Richardson in contempt for failing to pay child support. The court found that Mr. Richardson hadn't made any payments since May 15, 1984, and that he was in arrears $6,800. Mr. Richardson's only excuse was that Mr. Norton would no longer accept payments. In its order of January 6, 1987, the court found him in contempt, but suspended punishment on the condition that he immediately pay $1,000 to the petitioner, and that he begin meeting his obligation by paying $300 per month into the court: $200 for his regular child support obligation and $100 to be applied to the arrearage.

On February 25, 1991, and again on December 31, 1991, Mrs. Richardson filed Petitions for Contempt against Mr. Richardson. Both petitions alleged, among other things, that Mr. Richardson had failed to fund the trust. It appears that both petitions were dismissed for failure to prosecute.

On January 26, 1995, Mrs. Richardson petitioned the court for contempt and for an increase in child support. She claimed that the defendant had failed to fund the trust and failed to maintain health insurance on Bridgette Denyse. The defendant did not dispute that if he had fully funded the trust until his daughter

reached her majority in June of 1995, the principal balance would have been $34,800. The record showed that his actual payments into the trust amounted to $4,225.

Mr. Richardson's attorney argued that his trust obligation had been terminated in 1987. The trial court agreed, ruling as follows:

> "After careful consideration of the evidence and the record the Court finds that the final decree of divorce was modified by the Court's order entered January 9, 1987. The 1987 order effectively terminated the deposits into the trust and reduced the child support obligation to $200.00 per month. The Court has no independent recollection of the evidence necessitating a reduction in the amount of child support. The Defendant testified that it was because of his financial difficulties almost forcing him into bankruptcy. Nevertheless, the Court must speak through its minutes which the Court interprets as a discontinuation of further payments into the trust.

This appeal followed.

## II. The Power of the Court Over the Trust

Two questions determine the outcome of this appeal. First, whether the trial court had the power to terminate the appellant's obligation to fund the trust; secondly, if it did have the power, whether the trial court was correct in finding that it had exercised that power in its 1987 order.

In regard to the first question, the appellant argues that the terms of the trust instrument imposed a binding and irrevocable obligation on Mr. Richardson to fund the trust at the rate of $200 per month until Bridgette Denyse reached the age of eighteen. One clause of the agreement, reads: "[t]his agreement and the trust created hereby shall be irrevocable, and shall not be altered, amended, revoked or terminated by Settlor or any other person."

- 4 -

The trust instrument also recites that it was made "in furtherance of the terms of the Final Judgment in a divorce action between myself and my former wife, Elsie Marie Richardson . . . ." It directs the trustee to ". . . Pay or apply so much of the net income or the corpus as the Trustee shall in its sole and uncontrolled discretion deem proper for the education and extraordinary maintenance and support of the said Bridgette Denyse Richardson . . . ." Any amount accumulated but not disbursed before Ms. Richardson reached her majority was to be paid to her in three installments, at age, 21, 24, and 25 respectively.

The appellant concedes that the obligation to fund the trust is part of Mr. Richardson's general child support obligation. We therefore believe that the trust instrument stands on a different footing than a contract entered into by individuals acting on their own, without the participation of the trial court.

In *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975), our Supreme Court examined the nature of a contract drafted pursuant to a child support order. The wife sought to enforce a clause in the contract that required the husband to pay all future educational expenses of the parties' two daughters beyond high school. The husband argued that the clause in question was unenforceable because he could not be legally compelled to support his daughters after they reached the age of majority. The trial court agreed.

The Supreme Court reversed, finding that as the clause in question was outside the scope of the legal duty of support during minority, it retained its contractual nature, and could be enforced in accordance with its terms. As for provisions consistent with the legal obligations of child support, the Court said:

> "When the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature.

However, it is clear that the reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify."

521 S.W.2d at 224.

Since funding the trust for his daughter's benefit was a part of Mr. Richardson's child support obligation, we conclude that the trial court retained the same power to make changes to that obligation as to any other provision of its child support order, notwithstanding any language in the trust instrument as to the irrevocability of its terms. We note that Denyse Richardson is still entitled to receive the corpus of the trust in accordance with the instrument's original terms, because that portion of the trust agreement is not part of the duty of child support, and it retains its contractual nature.

### III. The 1987 Order

In regard to the question of whether the trial court was correct in finding that it had in fact terminated the appellee's trust obligation in 1987, the appellant offers us a two-pronged argument. First she points out that there is nothing in the procedural history leading up to the court's 1987 order, and nothing in the order itself, to indicate that the trust agreement was at issue. Second, she argues that because the appellee failed to plead the 1987 order as an affirmative defense to his obligations under the trust agreement, she was deprived of notice that the appellee would rely on that defense during the 1995 proceedings.

As the appellant points out, there is nothing in the record to indicate that Mr. Richardson ever requested that his trust fund obligation be terminated, and he has admitted that he never filed a petition to have his child support obligation reduced. He apparently did argue at the 1986 hearing that his worsening financial state would make it difficult for him to comply with the court's previous child support order. The 1987 order does not specifically mention the trust, and does not even state that it

constitutes a reduction in child support, but merely orders Mr. Richardson to henceforth pay $300 monthly, with $200 to be applied to his regular child support obligation and $100 to the arrearage.

The appellant argues that the lack of any reference to the trust fund proves that the trial court did not intend to terminate the obligation. But the same facts can be interpreted both ways. The 1987 order was the last order of the court on child support, and was clearly meant to supersede its earlier order. The appellee notes that if the trial judge intended for the trust obligation to continue, he could have specifically said so in the order, but he did not.

It seems most likely that the court and the attorneys simply overlooked the trust fund in 1987, especially in light of the fact that the $6,800 arrearage that the court's order attempted to cure was only about half of the amount that Mr. Richardson was obligated to pay between 1984 and 1987. But such an oversight did not relieve the court of the obligation to rule on the legal effect of its 1987 order after the parties returned to court.

Even though the judge has no independent memory of the proceedings, we still believe that the trial court is the best interpreter of its own orders. This court is even further removed from the events surrounding the 1987 order than is the trial court, and we would be reluctant to say that the judge's order means something different from what he says it means.

The appellant points out that the appellee did not plead the termination of the trust as an affirmative defense, and did not raise that argument in any form in any of his pleadings. The transcript indicates that the appellant seized upon this argument after she realized that the affirmative defense that she did plead, laches,

would not apply if the trust obligation were considered to be in the nature of child support.

The Rules of Civil Procedure require a party to "set forth affirmatively facts in short and plain terms relied upon to constitute [avoidances and affirmative defenses]." Rule 8.03, Tenn.R.Civ.P. A party may be deemed to have waived any defense (with some exceptions not relevant here) that he does not present by pleadings or motions. Rule 12.08, Tenn.R.Civ.P. Thus the trial court could have refused to hear Mr. Richardson's argument that his failure to fund the trust was excused by that same court's prior order. But we do not believe that it was obligated to do so.

The appellant argues that the lack of prior notice of the affirmative defense prevented her from making preparations to meet it, such as by searching for a transcript of the 1986 proceedings to unearth evidence that the court intended at that time for the trust obligation to continue. However we note that the Rules of Civil Procedure permitted her to file a Motion to Alter or Amend the Judgment, or a Motion for New Trial, which would have given her time and opportunity to develop new evidence or counter-arguments to present to the trial court. See Rule 59, Tenn.R.Civ.P. The record does not indicate that the appellant took advantage of that opportunity, nor was anything said at oral argument to lead this court to believe that such evidence was likely to emerge. We therefore hold that the trial court did not err in ruling that Mr. Richardson's obligations under the trust fund ended in 1987.

### IV. Medical Insurance

The divorce decree included an order for Mr. Richardson to provide medical insurance for his daughter. In her 1995 petition, Mrs. Richardson asked the court for a judgment for the money she herself paid to insure her daughter ($2,319)

and for medical and surgical expenses that were not covered by insurance ($1,545). Mr. Richardson testified that he did in fact maintain insurance on Denyse for the years 1980 to 1995, except for two or three years during which he did not have insurance himself.

Mrs. Richardson apparently asked Mr. Richardson about medical insurance only once, in a 1987 letter which reads in pertinent part:

> "By order of the court, you are to maintain health insurance for your daughter to cover costs of doctor's fees, medical fees and hospitalization; etc. In the past you have shown nothing but your unwillingness to comply by the court order, so I feel safe in assuming that you have never bothered to acquire any insurance coverage for your child. . . . If you do not have adequate insurance coverage for her at this time, please obtain the coverage for her now!"

Mr. Richardson denied ever receiving the letter, and Mrs. Richardson never followed it up with further inquiry.

It obviously would have been helpful for Mr. Richardson to voluntarily notify his ex-wife that he had complied with the court's order on medical insurance for his daughter, and to give her the name of the insurance company, a claim form, and an insurance card. We can go even further, and say that it would have been the right thing to do. But a moral obligation is not the same as a legal obligation, and we are unaware of any law that would require him to do so, if he does not receive a request for these items from her. We must count the resulting financial loss to Mrs. Richardson as among the many unfortunate consequences flowing from the lack of communication between the parties.

### IV. Attorney Fees

The appellant argues that the trial court erred in declining to grant her attorney fees for pursuing this action. A plaintiff spouse may recover from the other

spouse reasonable attorney fees incurred in enforcing any decree for child support. Tenn. Code Ann. § 36-5-103(c). However the award of attorney fees is in the sound discretion of the trial court. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. App. 1992).

There is no exhaustive list of the factors a trial court should take into account in exercising its discretion on the question of attorney fees. Such an award would seem to be most appropriate, however, where the plaintiff proves that she is entitled to an award for the benefit of her minor child, and where the cost of vindicating that right produces an an inequitable reduction in the actual amount the child receives. In this case the petitioner did not prove that she was entitled to the relief she sought, so we can see no abuse of discretion in the trial court's determination that she is not entitled to attorney fees.

## V.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Bedford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE