IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 21, 2004 Session

## LINDA KURTS (PARRISH) v. GREGORY PARRISH

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-00-0425-2     Arnold Goldin, Chancellor**

**No. W2004-00021-COA-R3-CV - Filed November 17, 2004**

This case involves the trial court's denial of an upward deviation in child support. The chancery court issued a final decree of divorce which incorporated the Permanent Parenting Plan approved by the parties. Pursuant to the plan, the mother was designated the primary residential parent and the father was given overnight visitation. The plan also ordered the father to pay the mother child support pursuant to the Tennessee Child Support Guidelines. When the father failed to make child support payments and exercise his visitation rights under the plan, the mother filed a petition for contempt. She also asked the trial court for an upward deviation in child support due to the father's failure to exercise his rights to overnight visitation. The mother also asked the chancellor to award her litigation costs associated with bringing the petition. The father filed a counter-petition, asking the court for a downward deviation in his child support obligation due to his recent loss of income. The trial court originally granted a downward deviation to the father finding that a significant variance existed, but subsequently reinstated the original child support award. The mother filed this appeal, alleging the chancellor erred in refusing to grant her an upward deviation in child support and in not awarding her litigation expenses. For the reasons contained herein, we reverse in part and affirm in part the decision of the chancery court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,**
**Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Craig B. Flood, Memphis, TN, for Appellant

Gregory A. Parrish, *pro se*, Marion, AR, for Appellee

# OPINION

## Facts and Procedural History

On October 9, 2001, the chancellor granted Linda Kurts-Parrish ("Mother" or "Appellant") an absolute divorce from Gregory Parrish ("Father" or "Appellee"). The chancellor approved a Permanent Parenting Plan, reached through mediation, which set forth the custody arrangement and child support obligation concerning the parties' two minor children, Zachary Addison Parish (DOB: 02/28/89) and Lauren Marie Parrish (DOB: 07/29/87) (collectively the "Children"). Prior to the court granting Mother an absolute divorce, Father left Memphis, Tennessee, and moved to Dallas, Texas, in order to take a higher paying job. The parenting plan directed Father to pay $1,464.00 in child support directly to Mother each month based on the income generated by his job in Texas. Regarding custody, the parenting plan provided that the Children were to reside with Mother while enrolled in school. Father was granted overnight visitation with the Children for part of their winter vacations, all of their spring vacations, part of their summer vacations from school, and each Thanksgiving holiday.

From October 9, 2001, until May 6, 2002, Father continued to reside in Texas. During this period of time, Father had only one week of overnight visitation with the Children. Father occasionally traveled back to Memphis on weekends and would sometimes visit with the Children on these visits. On February 14, 2003, Mother filed a Petition for Contempt and to Modify Final Divorce Decree of Absolute Divorce and Permanent Parenting Plan with the chancery court. Mother alleged that Father had not exercised overnight visitation with the Children as outlined in the parenting plan, and that Father had either not paid any child support for certain months or had paid less than the amount ordered by the court. Mother asked the chancery court for an upward deviation in child support due to Father's non-visitation with the Children, and for her litigation expenses associated with filing the petition. Father filed an answer and a counter-petition to Mother's petition on May 1, 2003. In his petition, Father asked the chancellor to modify the original parenting plan and award him more visitation time with the Children. In response to Mother's assertions regarding non-payment of child support, Father alleged that he and Mother entered into a verbal agreement to modify the original child support obligation. Father also asserted that a material change in circumstances had occurred since the parenting plan was entered into, warranting a downward deviation in child support. Specifically, Father stated that he had taken a new job in Marion, Arkansas, to be closer to the Children, and that this new job resulted in less income.

The chancellor conducted a hearing on July 10, 2003, to consider the evidence presented by both parties regarding their respective petitions. On August 12, 2003, the chancellor entered an order containing the following findings:

> 1. Respondent, Gregory Parrish, according to stipulation of the parties, has a child support arrearage of $6,696.38 and owes Petitioner attorney fees in the amount of $1,687.50, all of which is to be paid at the rate of $170.00 per month.

2. The Court finds that there has been a significant deviance in Respondent's income to justify reducing and resetting child support of $1,265.00 per month.

3. Petitioner's request to deviate upward from the child support guidelines because Respondent has less parenting time than contemplated by the guidelines is denied.

4. Respondent shall have visitation with the parties' children every other Saturday from 10:00 a.m. to 2:00 p.m. and one evening each week when he does not have the Saturday visitation. Respondent will be responsible for picking up and delivering the children for his parenting time.

5. Respondent shall pay Court costs in this matter, including the $75.00 filing fee reimbursing Petitioner and shall be responsible for one-half the Court reporter's per diem.

On September 11, 2003, Mother filed a motion for a new trial alleging the following: (1) the court erred in awarding Father a downward deviation in child support because he was voluntarily underemployed and no significant variance existed, (2) the chancellor erred in not awarding her an upward deviation for non-visitation pursuant to the Tennessee Child Support Guidelines ("Guidelines"), (3) the court erred in not awarding her attorney's fees incurred from the hearing, and (4) the chancellor erred in not awarding her the entire amount of the court reporter's fee.

The chancellor issued a ruling on Mother's motion for a new trial on December 10, 2003, in which he reversed the court's order of August 12, 2003. The chancellor stated that no significant variance existed warranting a downward deviation, therefore Father should continue to pay child support in the amount set forth in the original parenting plan. The chancery court also denied Mother's motion for a new trial in regards to an upward deviation in child support for non-visitation, and denied her request for additional attorney's fees and the full amount of the court reporter's fee. Mother appeals the rulings of the chancery court regarding her motion for a new trial, submitting the following issues for our review:

I. Whether the chancery court erred in denying Appellant's request for an upward deviation in child support pursuant to the Tennessee Child Support Guidelines due to Appellee's failure to exercise visitation as contemplated in the parenting plan;

II. Whether the chancery court erred in denying Appellant additional attorney's fees and the entire court reporter's fee incurred by Appellant as a result of the hearing conducted in this matter below; and

III. Whether Appellant should be awarded attorney's fees incurred as a result of seeking this appeal.

## Standard of Review

In reviewing the findings of the chancery court, we are guided by the following standard of review:

> Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law.

*Watters v. Watters*, 22 S.W.3d 817, 820 (Tenn. Ct. App. 1999); Tenn. R. App. P. 13(d) (2003). "Questions of law are reviewed *de novo* with no presumption of correctness." *Hoback v. Hoback*, No. M2001-01913-COA-R3-CV, 2004 Tenn. App. LEXIS 205, at *3 (Tenn. Ct. App. Apr. 5, 2004) (citing *Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961)). We have greater latitude when determining whether a lower court's findings as to mixed questions of fact and law are supported by the evidence. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). In addition, when reviewing a trial court's decisions regarding child support we apply the following standard of review:

> [W]e review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

## Upward Deviation for Non-Visitation

On appeal, Mother contests the chancellor's ruling, denying her an upward deviation in child support due to Father's failure to exercise his rights to overnight visitation under the original parenting plan. Mother directs our attention to rule 1240-2-4-.04(b) of the Guidelines, arguing that this rule is mandatory and requires a trial court to enter an upward deviation when the visitation exercised by a non-custodial parent is less than that set forth in the rule.

"The child support guidelines were promulgated by the Tennessee Department of Human Services, pursuant to § 36-5-101(e)(2), and have force of law." *Smith v. Smith*, 984 S.W.2d 606, 608 (Tenn. Ct. App. 1997) (citing *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993)). The Guidelines are intended to represent the minimum base at which the trial court must begin when determining child support obligations. Tenn. Comp. R. & Regs. 1240-2-24-.02(5); *Dwight v. Dwight*, 936 S.W.2d 945, 948 (Tenn. Ct. App. 1996). "These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year." Tenn. Comp. R. & Reg. 1240-2-4-.02(6). The average overnight visitation schedule set forth in the Guidelines amounts to approximately eighty (80) days per year. *Shell v. Law*, No. 03A01-9608-CV-00251, 1997 Tenn. App. LEXIS 183, at *12–13 (Tenn. Ct. App. Mar. 18, 1997). The Guidelines also provide the criteria that a trial court must utilize when deviating from the minimum base award reached under the Guidelines. Tenn. Comp. R. & Reg. 1240-2-4-.04. One of these criteria specifically addresses the lack of overnight visitation by a non-custodial parent, and provides as follows:

> (1) Since these percentage amounts are minimums, the court *shall increase* the award calculated in Rule 1240-2-4-.03 for the following reasons:
> . . .
>
> (b) If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount *shall be added* to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) is/are not with the obligor [reference 1240-2-4-.02(6)]. The court *may* consider a downward deviation from the guidelines if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule.

Tenn. Comp. R. & Reg. 1240-2-4-.04(1)(b) (emphasis added).

The portion of the Guidelines dealing with less than average overnight visitation by a non-custodial parent is mandatory. *Hoback*, 2004 Tenn. App. LEXIS 205, at *12 ("The guidelines provide that since the percentage awards are minimum the court shall increase child support if overnight parenting time is less than 80 days per year, but if parenting of the obligor is more than 80 days the Court may consider a downward deviation."); *see also Rogers v. Rogers*, No. E2002-02300-COA-R3-CV, 2003 Tenn. App. LEXIS 494, at *10 n.3 (Tenn. Ct. App. July 14, 2003); *Smith v. Smith*, No. M2000-02186-COA-R3-CV, 2001 Tenn. App. LEXIS 673, at *20 (Tenn. Ct. App.

Sept. 11, 2001); *Dwight*, 936 S.W.2d at 949; *Piper v. Andrews*, No. 01A01-9612-CV-00570, 1997 Tenn. App. LEXIS 907, at *12 (Tenn. Ct. App. Dec. 17, 1997); *Kimble v. Kimble*, No. 02A01-9503-CV-00049, 1996 Tenn. App. LEXIS 453, at *4–5 (Tenn. Ct. App. Aug. 8, 1996); *Lindberg v. Lindberg*, No. 02A01-9407-CV-00169, 1995 Tenn. App. LEXIS 668, at *13–14 (Tenn. Ct. App. Oct. 17, 1995). Therefore, if the trial court finds that the obligor parent is not exercising overnight visitation for the average period set forth in the Guidelines, then the court must award an increase in child support. Such an increase reflects the economic realities faced by the obligee/custodial parent who, in addition to having a larger share of custody than contemplated by the parenting plan, also assumes a larger share of the financial burden in caring for the children. *Smith*, 2001 Tenn. App. LEXIS 673, at *25 ("If the child is constantly in the care of Wife, the amount of child support that she receives should reflect the same."); *Dwight*, 936 S.W.2d at 949; *Lindberg v. Lindberg*, No. 02A01-9407-CV-00169, 1995 Tenn. App. LEXIS 668, at *13–14 (Tenn. Ct. App. Oct. 17, 1995) ("When the obligor fails to exercise this amount of visitation, the child support award should be adjusted upward to compensate the custodial parent for additional expenses incurred as a result of keeping the child[ren] on days that the noncustodial parent would have otherwise kept the child[ren]."); *Hawk v. Hawk*, No. 03A01-9407-GS-00249, 1994 Tenn. App. LEXIS 755, at *3 (Tenn. Ct. App. Dec. 20, 1994) ("[T]o permit lowering or elimination of support obligations because of less than average or non-visitation, would result in a windfall or reward to a noncustodial parent, should he or she decide to discontinue or reduce visitation, in contravention of the goals espoused by the guidelines.").

Father asserts that he has made every effort to visit with the Children but believes that the Children are thwarting his attempts at overnight visitation. Father alleges that he has repeatedly attempted to spend time with the Children, but they refuse to either call or spend time with him. Our review of the record, however, indicates that the evidence does not entirely support Father's position. At the hearing conducted by the chancellor on July 10, 2003, Father testified as follows:

> Q. Now, you were divorced October 9, 2001; is that correct?
> A. Yes.
> Q. And you entered a Parenting Plan which provided you for some visitation with your children; is that right?
> A. Yes.
> Q. You got time in the summer, during the spring vacation and other times; is that right, that you wanted visitation?
> A. According to the Parenting Plan.
> Q. Okay. And since the time that you were divorced and Parenting Plan was entered on October 9, 2001, how many overnights have you had the children with you?
> A. One week during the summer. It was when I lived in the Dallas metroplex area.
> Q. All right. Now, between October 9th, 2001 and I think you said May 6th, 2002, did you come back to Memphis on weekends every so often?

> A. Yes.
>
> Q. And did you see your children then?
>
> A. Yes, sometimes. I can't tell you exactly when and what dates, but yes, some I did.
>
> Q. And then sometimes you came back to Memphis and you didn't see them; is that right?
>
> A. Yes.
>
> Q. Now, did you ever have them come down to – beside from the one week we've talked about, did you ever have them come down to Dallas at any other times?
>
> A. No.

Father alleged that he has repeatedly called the Children and leaves voice messages, but they do not return his calls. Regarding his attempts to call the Children, Father stated:

> Q. How many times have you called them, Mr. Parrish?
>
> A. I've called them several times.
>
> Q. Several times in the last couple of years?
>
> A. No. Since I've been back to Memphis and over the last couple of months.

Father testified that Mother is also responsible for his lack of overnight visitation with the Children because she does not notify him of the Children's extracurricular activities. Father testified that he moved to Marion, Arkansas, in May of 2002 to be closer to the Children and re-establish a relationship. Father admitted at the hearing that he has never requested overnight visitation with the Children and been turned down. Yet, Father testified that he has not contacted Mother since he moved to Arkansas to ascertain the Children's extracurricular activities schedule, has not spoken with his son's coach, and has not spoken with the Children's teachers about their school performance. Father testified that he also has not sent the Children Christmas or birthday presents. When asked why he did not tell Mother that he wanted the Children to come stay with him in the summer, Father stated that he was in a one-bedroom apartment and did not know how many hours he would be working at his new job. Father's position at the hearing was that, if the Children do not want to see him, he does not want to force them to do so.

Father stated that he primarily communicates with Mother by email. Mother corroborated that the parties primarily communicate by email, but offered that this was necessary because Father did not give her his new address in Dallas when he moved and did not inform her that he was moving back to Arkansas. Mother testified that after Father moved back to Arkansas, he told her she could find his new address on a check that he sent to her. Mother, however, stated that the address on the check was not Father's address. Mother stated that she does not discourage the Children from staying overnight with Father. She testified that she spoke to Father at their son's ball game and told him that since he was in the Memphis area they would work out a schedule for visitation, but that Father stated he did not want to make the Children see him if they did not want

to. On the one occasion that the son did return Father's call, Mother stated that she made their son return the call before she would take him out to celebrate his birthday. The chancellor also spoke to the parties' minor son in chambers concerning his relationship with Father.[1]

Whatever the reasons put forth by Father, the record clearly reveals that Father has not exercised his right to overnight visitation with the Children. Our focus, as well as the trial court's, must be directed toward the best interest of the Children, and economic support plays a vital role in that endeavor. While we are cognizant of Father's assertion that he has chosen to take a lower paying job in order to move closer to the Children in hopes of repairing their relationship, we are bound by the mandatory language of the Guidelines.[2] *See Smith*, 2001 Tenn. App. LEXIS 673, at *25 ("While we acknowledge that Husband's military career involving relocation may have prevented visitation with his child to some degree, and recognize that there may have been difficulty between the parties in making visitation arrangements, the fact remains that, for what ever reasons, Husband failed to visit the child for a significant period of time, and that the child needs to be supported."); *Dwight*, 936 S.W.2d at 947 (remanding for an upward deviation in child support despite father's assertion that his job duties as a pilot prevented him from exercising overnight visitation); *Hawk*, 1994 Tenn. App. LEXIS 755, at *4 (stating that a father's voluntary assumption of new obligations cannot be a basis for reduction in a child support obligation).

We find that the chancellor's denial of an upward deviation in child support for non-visitation was in contravention of the law applicable to this case and constitutes an abuse of discretion. Therefore, we remand to the chancery court with instructions to award Mother an upward deviation in child support consistent with this opinion. In granting an upward deviation, the Guidelines provide that the trial court shall set "an amount," thereby vesting the trial court with considerable discretion. Tenn. Comp. R. & Reg. 1240-2-4-.04(1)(b). In exercising this discretion, the trial court must be guided by the aforementioned purpose behind granting an upward deviation for non-visitation. *See Lindberg*, 1995 Tenn. App. LEXIS 668, at *14. The record before us on appeal contains scant evidence regarding Mother's actual expenses incurred as a result of Father's non-visitation. While Mother testified that she has had to pay for the Children's extracurricular activities, food, and other expenses, the record contains no evidence regarding amounts. On remand, the chancellor is instructed to conduct an evidentiary hearing concerning Mother's costs associated with

---

[1] At the time of the hearing, the parties' son was fourteen years of age. Section 36-6-106 of the Tennessee Code permits the trial court to hear testimony from a child over twelve years of age concerning the child's preference on custody. Tenn. Code Ann. § 36-6-106(a)(7) (2003). Following this exchange, the chancellor noted a certain level of hostility in the son's attitude toward Father. The chancellor stated that the son's hostility stemmed from conversations he had with Mother concerning Father's actions leading up to the divorce.

[2] We are not asked on appeal to review the chancery court's finding that Father was not voluntarily and willfully underemployed as a result of taking a lower paying job. *See Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 Tenn. App. LEXIS 323, at *25–26 (Tenn. Ct. App. May 4, 2001); *Watters v. Watters*, 22 S.W.3d 817, 821–23 (Tenn. Ct. App. 1999); *Ralston v. Holloway*, No. 01A01-9804-CV-00222, 1999 Tenn. App. LEXIS 529, at *7–13 (Tenn. Ct. App. Aug. 3, 1999).

caring for the Children during those times that Father is not exercising visitation as outlined in the Permanent Parenting Plan.[3]

## Attorney Fees and Court Reporter Fees

In her petition for contempt, Mother asked the chancery court for her fees and costs associated with pursuing this matter against Father. In the order entered on August 12, 2003, the chancellor ruled that Father was to pay the costs associated with pursuing the motion for contempt and modification of child support, Father was to pay the $75.00 filing fee, and Father was to be responsible for one-half of the court reporter's fee. In her motion for a new trial, Mother alleged that the chancellor erred in not awarding her $350.00 in attorney's fees incurred from the hearing, as well as the entire amount of the court reporter's fee. The chancellor's order addressing Mother's motion for a new trial denied her request for additional attorney's fees and the entire amount of the court reporter's fee. On appeal, Mother asks this court to reverse the chancellor's ruling in this regard.

Mother's request for attorney's fees is premised upon section 36-5-103(c), which provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2003). "There is no absolute right to such fees, but their award in custody and support proceedings is familiar and almost commonplace." *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). As set forth in the statute, the decision of whether to award attorney's fees is entirely a discretionary function of the trial court. *Id.*; *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (citing *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)); *Norton v. Norton*, No. 02A01-9901-CH-00030, 2000 Tenn. App. LEXIS 13, at *28–29 (Tenn. Ct. App. Jan. 10, 2000). "These awards are appropriate when the parent seeking to defend

---

[3] "We use the term 'full evidentiary hearing' to mean a hearing during which live testimony is offered and the parties may conduct cross-examination." *McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 210 n.1 (Tenn. 2003). On remand, the chancellor is not required to have the parties re-litigate issues concerning whether Father has exercised less than average visitation under the Guidelines. In addition, while we have not been asked to address any changes in the custody arrangement regarding the Children, we are mindful that the situation regarding custody may change in the future. In the event that such changes have a bearing on future child support obligations, the chancery court is available to the parties to seek a modification as set forth in the Guidelines if circumstances warrant. *Shell*, 1997 Tenn. App. LEXIS 183, at *13.

or to enforce a child support obligation prevails or when requiring the prevailing spouse to pay his or her legal expenses would inequitably reduce the amount of support the child receives." *Chorost v. Chorost*, No. M2000-00251-COA-R3-CV, 2003 Tenn. App. LEXIS 441, at \*41 (Tenn. Ct. App. June 17, 2003) (citing *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)). The purpose of awarding attorney's fees pursuant to the statute is to protect the children's, not the parent's, legal interests. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). "A spouse who is otherwise entitled to an award for legal expenses should not be prevented from collecting them simply because he or she might be financially able to pay these fees on their own." *Chorost*, 2003 Tenn. App. LEXIS 441, at \*41 (citing *Gaddy v. Gaddy*, 861 S.W.2d 236, 241 (Tenn. Ct. App. 1992)); *see also Sherrod*, 849 S.W.2d at 785. Regarding an award of attorney's fees under the statute, we have stated:

> There is no exhaustive list of the factors a trial court should take into account in exercising its discretion on the question of attorney's fees. Such an award would seem to be most appropriate, however, where the plaintiff proves that she is entitled to an award for the benefit of her minor child, and where the cost of vindicating that right produces an inequitable reduction in the actual amount the child receives.

*Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). "[T]rial courts may award attorney's fees without proof that the requesting party is unable to pay them as long as the award is just and equitable under the facts of the case." *Id.*

"Unless it 'affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining,' the trial court's exercise of discretion will not be reversed on appeal." *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999)). To be upheld, "[t]he trial court's award of attorney's fees, or denial of an award, need only be just and equitable under the circumstances." *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 Tenn. App. LEXIS 712, at \*22–23 (Tenn. Ct. App. Oct. 22, 1997) (citing *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)). "We will not interfere with a trial court's decision to [deny] attorney fees under Tenn. Code Ann. § 36-5-103(c) absent some abuse of discretion." *Tinsley v. Tinsley*, No. M2001-02319-COA-R3-CV, 2002 Tenn. App. LEXIS 778, at \*24 (Tenn. Ct. App. Nov. 1, 2002) (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996)).

Mother submitted an affidavit to the chancery court setting forth the attorney's fees that she incurred as a result of the hearing on her petition. While awarding litigation expenses in cases such as these is commonplace, the trial court, in its discretion, may find that the petitioning party should bear some of the litigation expenses. *See Joiner v. Griffith*, No. M2003-00536-COA-R3-JV, 2004 Tenn. App. LEXIS 375, at \*27 (Tenn. Ct. App. June 14, 2004). Our review of the record does not reveal that the trial court abused its discretion in denying Mother additional litigation expenses beyond those already ordered by the court. This is especially true in light of the fact that the record

does not reveal whether the reasonableness and necessity of Mother's litigation expenses was sufficiently proven. *See Tinsley*, 2002 Tenn. App. LEXIS 778, at *25–27.

## Attorney's Fees on Appeal

"The discretion of whether to award attorney's fees for an appeal is within our discretion." *Harris v. Harris*, 83 S.W.3d 137, 141 (Tenn. Ct. App. 2002) (citing Tenn. Code Ann. § 36-5-103 (2000)). We find that Mother's appeal was necessary in order to secure the Children's financial well being, therefore, we award Mother her reasonable attorney's fees associated with this appeal. *See id.* On remand, the chancery court is instructed to set a reasonable fee for the services rendered to Mother by counsel on appeal.

## Conclusion

The judgment of the chancery court as it pertains to an upward deviation of Father's child support obligation for non-visitation is reversed, and we remand for further proceedings consistent with this opinion. The judgment of the chancery court related to the denial of Mother's additional litigation expenses is affirmed. The costs of this appeal are taxed equally against Appellee, Gregory Parrish, and Appellant, Linda Kurts-Parrish, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE