# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 12, 2000 Session

## CLIFTON DEAN FAIN v. SUSAN LORRAINE FAIN

**Appeal from the Chancery Court for Williamson County**
**No. 25074     Russ Heldman, Chancellor**

---

**No. M1999-02261-COA-R3-CV - Filed December 29, 2000**

---

In this post-divorce proceeding, Clifton Dean Fain ("Father") filed a petition seeking sole custody of the parties' minor child. Susan Lorraine Fain ("Mother") counterclaimed for a modification of the joint custody arrangement or, in the alternative, for sole custody of the child. The trial court awarded Mother sole custody. Father appeals the award of sole custody to Mother. He also challenges the award of attorney's fees to Mother and questions the fairness of the quantum of his visitation time with the child. Mother seeks attorney's fees for this appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Lew Conner, Grant C. Glassford, and Bryan E. Pieper, Nashville, Tennessee, for the appellant, Clifton Dean Fain.

Charles G. Blackard, III, Brentwood, Tennessee, for the appellee, Susan Lorraine Fain.

### OPINION

### I.

Clifton Dean Fain ("Father") and Susan Lorraine Fain ("Mother") were divorced by judgment of the trial court entered March 6, 1998. Pursuant to the parties' marital dissolution agreement, they were awarded joint custody of Clifton Dean Fain, II (DOB: December 27, 1989) ("Dean"), the only child of this marriage. Father was designated as the primary custodian. The marital dissolution agreement sets forth the child's residential schedule as follows:

> The child shall reside with his mother each week from after school on
> Monday to Tuesday morning before school and from Wednesday after

school to Thursday before school. In the event there is no school, the time shall run from 5:00 p.m. in the afternoon until 8:00 a.m. in the mornings. The mother shall have the child on alternate weekends from Friday after school (or 5:00 p.m.) through Tuesday before school (or 8:00 a.m.).

On July 29, 1998, Father filed a petition seeking sole custody of the child. Mother filed an answer, denying that a material change of circumstances had occurred that would warrant a change of joint custody and requesting that the joint custodial arrangement not be dissolved. In a counterclaim, however, Mother requested a modification of the residential schedule so that the child would reside with her during the school week and with Father on the weekends. Mother also stated in her counterclaim "that if the Court finds a change of circumstance that it would be in the best interest of the minor child that custody be placed with her and that the Father have visitation." A hearing was held on the competing petitions to change the custodial arrangement on March 3, 1999. The testimony at trial revealed the facts that follow.

Father is a computer analyst and lives in Brentwood, Tennessee. He remarried in April, 1998. His new wife, Connie Fain, has two children by a prior marriage. In addition, one child has been born to Father and Connie Fain. By all accounts, Dean is very close to his stepsiblings and gets along well with his stepmother. Father admitted that he had lived with Connie Fain prior to their marriage.

Mother is employed by General Electric Health Care and lives in Franklin, Tennessee. After the parties' divorce, she began dating Brian Baker. Because Mr. Baker resides in Florida, Mother and the child have made trips to Florida to visit him. Mr. Baker also visits Mother in Tennessee, often staying for a week at a time. Dean testified that during these visits, Mr. Baker and Mother shared a room together. Mother testified that she and Mr. Baker intended to marry, but had no definite plans because of his inability to transfer his employment to Tennessee.

Father and Connie Fain both testified that they felt their household offered more structure and routine for Dean. Father claimed that Mother rarely cooks and often takes the child to restaurants for meals. Father testified that he has always been Dean's primary caregiver, even when the parties were married. Several of Father's relatives also testified that they considered Father to be Dean's primary caregiver. Mother disputed Father's testimony. She described Dean's daily routine while at her home and testified that they eat out only occasionally. Mother asserted that the caregiving responsibilities were always shared by the parties during their marriage.

Both Mother and Father testified that the current custodial arrangement – essentially a day-to-day "swap" – is not in the best interest of the child. Mother testified that a week-to-week arrangement would be better than a day-to-day exchange. Father rejected the alteration of the joint custody arrangement to a week-to-week rotation, opining that such an arrangement would still result in instability and confusion for Dean. Connie Fain testified that she did not think a week-to-week

arrangement would be appropriate because it would not settle the "conflict of different parenting styles."

By all accounts, Dean is performing well in school and is involved in several extracurricular activities. Father was an assistant coach of Dean's football team. Mother often attended Dean's football practices, even though Dean was not in her custody on those particular days. Dean testified that Father would get upset with him for talking to Mother at practice. Father testified that he had no problem with Mother attending Dean's football games; however, he admitted that he did not like Mother attending the daily practices because it "puts [Dean] in the middle" and forces him to choose between his parents.

Mother testified that she often calls or sends e-mails to Dean while he is at Father's home. Dean testified that Father often gets angry when Mother calls. Dean also stated that he does not get to call Mother from Father's home "[b]ecause it's my day to be over there, and my dad doesn't like it when I call her. Unless it's something that I really need, then I can call her." Father testified that Mother's frequent calls "just keeps [Dean] stirred up." Connie Fain testified that Mother's calls and e-mails "stress[] Dean out." Father stated that he desires less contact from Mother while Dean is in his custody because "that is our time to be with him." On the other hand, Dean reported that Mother does not get angry whenever he calls Father and that she in fact encourages him to call.

Connie Fain admitted that she used derogatory language toward Mother on one occasion and that her remarks were overheard by the child. The incident occurred on Christmas Eve, 1998, three months prior to trial. Mother brought Dean to Father's residence for his holiday visitation. She testified that Dean had asked to bring his opened Christmas presents to Father's house and that she had agreed. When they arrived, however, Father told Mother that he did not want the child's gifts from Mother there. Mother and Father had a heated argument, which greatly upset the child. Later that day, Connie Fain called Mother and they began to argue. At one point, Connie Fain called Mother a "bitch" and a "horrible mother." These comments were overheard by Dean. Father explained that he was upset because he felt that it was unfair for Dean to have opened gifts when his stepsiblings had not opened their presents. Connie Fain testified that she had not intended for Dean to hear her remarks.

Dean is currently in counseling to help him adjust to his parents' divorce and his Father's subsequent remarriage. His counselor testified that the current custodial arrangement is confusing for the child and increases his anxiety. It was her opinion that the parties were "equally good parents."

After the parties rested, the trial court articulated several factors it would consider in making its decision. Among those factors was Mother's relationship outside of marriage with Mr. Baker. The court declared that it would take the case under advisement for 30 days and that "[i]n the meantime, if someone notifies the Court that one of the factors that I've articulated today is now moot, that may change how I rule. That's all I'm saying."

On March 23, 1999, Mother filed an affidavit, along with a copy of a marriage certificate, demonstrating that she and Mr. Baker had married on March 20, 1999. The court admitted these documents as a late filed exhibit. On March 24, 1999, the trial court filed its memorandum opinion, in which the court found that the child needs "one residence, one haven" and that the joint custody arrangement originally agreed upon by the parties had "broken down." The court noted that although it was "a close case" and it found that "[b]oth parents were impressive," the court decided that ultimately the evidence tilted "ever so slightly" in favor of Mother. The trial court noted that Father should "have a considerable amount of time with the child" and that his visitation "clearly should be 'more than standard.'" The trial court requested that each party file a written proposal as to Father's visitation and the amount of child support to be paid.[1]

After the parties submitted their respective proposals, the trial court, by entry of an order on June 24, 1999, adopted Mother's visitation proposal. Father was awarded visitation every other weekend from Friday at 6:00 p.m. until Tuesday at 8:00 a.m.; four ten-day periods in the summer; one week at Christmas, with all other holidays alternating between the parties; and alternating spring breaks. The court also awarded Mother one-half of her attorney's fees.

Father filed a motion to alter or amend the judgment or, in the alternative, for a new trial. Specifically, Father asked the court to set aside the judgment and award him sole custody of the child or, in the alternative, to grant joint custody to the parties. In the "further alternative," Father asked for a new trial. Upon considering Father's motion, on September 16, 1999, the trial court ordered a new trial on the basis "of certain statements made at trial by counsel on behalf of [Mother], statements which may not be binding at a later time." The trial court did not specify which statements by Mother's counsel warranted the granting of a new trial. The court ordered that "[t]he evidence at the new trial shall be supplemental only and limited to evidence dated or occurring after March 2, 1999."

Father filed a motion to modify and/or clarify the trial court's September 16, 1999, order granting a new trial. Mother filed a response, arguing that the court's order awarding her sole custody should not be set aside. By entry of an order dated November 15, 1999, the trial court reaffirmed its order awarding custody to Mother and vacated the portion of its September 16, 1999, order granting Father a new trial. The court denied "in its entirety" Father's motion to alter or amend or, in the alternative, for a new trial. It further awarded Mother additional attorney's fees incurred as a result of Father's post-judgment motions. This appeal followed.

II.

In this non-jury case, our review of the trial court's factual findings is *de novo*; however, the case comes to us accompanied by a presumption that those findings are correct – a presumption we must honor unless the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d); ***Musselman v. Acuff,*** 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Our search for

_____

[1]The issue of child support is not before us on this appeal.

the preponderance of the evidence is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman,* 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

An initial award of custody is "subject to such changes or modification as the exigencies of the case may require." T.C.A. § 36-6-101(a)(1) (Supp. 1999). This court has noted that the initial judgment awarding custody "is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *Griffin v. Stone,* 834 S.W.2d 300, 301-02 (Tenn. Ct. App. 1992). The best interest of the child is the paramount consideration. *Musselman,* 826 S.W.2d at 922.

"Custody decisions are factually driven and require the careful consideration of numerous factors." *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). A petition to modify a custodial arrangement addresses itself to the wide and sound discretion of the trial court, and "we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion." *Brumit v. Brumit,* 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

III.

The joint custodial arrangement incorporated in the parties' divorce judgment contemplates essentially a day-to-day exchange of the child during the week. It is not disputed that this arrangement has proven to be problematic for the parties' child. The trial court was therefore correct in finding a material change of circumstances warranting a modification of the custodial arrangement. *See Rubin v. Kirshner,* 948 S.W.2d 742, 745 (Tenn. Ct. App. 1997); *Dalton v. Dalton,* 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993); *Dodd v. Dodd,* 737 S.W.2d 286, 290 (Tenn. Ct. App. 1987). Having found a material change of circumstances, we must now determine whether the trial court abused its discretion in awarding custody to Mother.

Father argues that the trial court erred in failing to award him sole custody of the child. He contends that under a comparative fitness analysis, he is the more appropriate custodian. He argues that Mother presented no evidence at trial to establish that an award of custody to her would be in the child's best interest. In the alternative, Father contends that the trial court should have simply altered the joint custody arrangement to a week-to-week rotation between the parties.

The evidence does not preponderate against the trial court's decision to award custody to Mother. In making its determination, the court, utilizing the factors set forth in T.C.A. § 36-6-106 (Supp. 1999), noted that it was a very "close case" and that both Mother and Father were "impressive." The court, however, placed particular emphasis upon T.C.A. § 36-6-106 (10), which calls upon the court to consider "[e]ach parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent,

consistent with the best interest of the child." The evidence does not preponderate against the trial court's finding that Mother is more willing and able to encourage a positive, meaningful relationship between the child "and the other parent." *Id*. Upon reviewing all the evidence, we cannot say that the trial court abused its discretion in awarding custody to Mother.

Father argues that the trial court gave little consideration to Mother's admitted cohabitation with Mr. Baker prior to their marriage in March, 1999. A parent's cohabitation outside of marriage, however, is but one factor a court considers in determining what custodial arrangement would be in the best interest of the child. *Musselman,* 826 S.W.2d at 922. Mother's sexual behavior alone is not a basis for a change of custody unless there is a showing that such behavior adversely affected the child. *See id.* at 923. Upon reviewing the evidence, we do not find any indication that Mother's behavior has had an adverse affect upon Dean. Moreover, we note that Father admitted that he lived with Connie Fain for several weeks prior to their marriage. The comparative fitness analysis is not affected by one parent's cohabitation if in fact both parents have engaged in the same type of conduct. *Gaskill v. Gaskill,* 936 S.W.2d 626, 634 n.7 (Tenn. Ct. App. 1996). Furthermore, the trial court acted within its discretion when it obviously took into account the fact that Mother is now married. *Cf. Musselman,* 826 S.W.2d at 922.

Alternatively, Father argues that the trial court should have maintained joint custody but altered the schedule to a week-to-week rotation. This argument is contrary to Father's own testimony to the effect that a week-to-week arrangement would be no less confusing or difficult for the child. Father's argument is without merit.

## IV.

Father next argues that the trial court erred in granting him essentially only standard visitation when the court specifically found that Father's visitation "clearly should be 'more than standard.'"

A trial court has wide discretion with respect to the matter of visitation. *Jahn v. Jahn,* 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). In the instant case, Father was awarded extended every-other-weekend visitation, from Friday at 6:00 p.m. until Tuesday at 8:00 a.m.; four ten-day periods during the summer; one week at Christmas, with all other holidays alternating between the parties; and alternating spring breaks. We do not find that the trial court abused its discretion in setting Father's visitation. This schedule grants Father considerably more time with the child than is contemplated by the Child Support Guidelines. *See* Tenn. Comp. R. & Regs., Ch. 1240-2-4-.02(6) (describing standard visitation as every other weekend Friday through Sunday, two weeks in the summer, and two weeks during the holidays). Father's argument is without merit.

## V.

Father argues that the trial court erred in awarding Mother attorney's fees that she incurred as a result of the post-judgment motions filed by Father. He contends that such an award was improper because (1) his post-judgment motions were proper and meritorious; (2) the trial court's

prior opinions had "cried out" for modification and clarification; (3) Mother made a request for attorney's fees only in her original counterclaim and not in any post-judgment motion; and (4) the fee was awarded *ex parte* based solely upon a supplemental affidavit from Mother with no right of cross examination or other contest by Father.

The award of attorney's fees in a post-divorce proceeding such as the one now before us is governed by T.C.A. § 36-5-103, which states, in pertinent part, as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. § 36-5-103(c) (Supp. 1999). An award of attorney's fees is within the trial court's sound discretion. **Richardson v. Richardson,** 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Upon reviewing the record in this case, we cannot say that the trial court abused its discretion in awarding Mother her attorney's fees incurred as a result of Father's post-judgment motions. Furthermore, we find nothing in the record to indicate that Father asked the trial court to cross-examine Mother or her counsel with respect to the former's requested fees.

Mother seeks her attorney's fees incurred on this appeal. We find that she is entitled to such an award and therefore remand this case to the trial court for a determination of a reasonable fee. *See **D v. K,*** 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995) (on petition for rehearing).

VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded for a determination of an award to Mother of her attorney's fees incurred on this appeal, for collection of costs, and for enforcement of the judgment below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE