IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# HOMER ERNEST WEEKS, III v. KRISTINA LEA CORBITT

**Direct Appeal from the Circuit Court for Knox County**
**No. 63653     Bill Swann, Judge**

---

**No. E1999-02698-COA-R3-CV - Decided June 20, 2000**

---

This is a post-divorce proceeding regarding the custody of Homer Ernest Weeks, IV (DOB: March 23, 1990) ("Ernie"). Homer Ernest Weeks, III ("Father") sought increased co-parenting time with, and greater decision-making authority with respect to, his son. Kristina Lea Corbitt ("Mother") counterclaimed for sole custody. The trial court dissolved the joint custody agreement that had been incorporated into the parties' divorce judgment and instead designated each parent as the sole decision-maker regarding specific areas of the child's life. The court also decreed an increase in Father's co-parenting time to one week out of every 21 days and further decreed that the co-parenting schedule would change to a two-week/two-week rotation between the parties at the end of five years. It denied Mother's request for attorney's fees. Mother appeals (1) Father's increased co-parenting time; (2) the trial court's decision not to award her decision-making authority over the child's health and the court's decision not to require Father to cooperate in other decision-making areas of authority awarded to her; and (3) the change of co-parenting time in the future. She also seeks attorney's fees below and on appeal.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which FRANKS, and SWINEY, JJ., joined.

Sandra G. Olive, Knoxville, Tennessee for the appellant, Kristina Lea Corbitt.

Charles W. Swanson and Jason H. Long, Knoxville, Tennessee, for the appellee, Homer Ernest Weeks, III.

## OPINION

I.

The parties' marriage was dissolved by final judgment entered June 30, 1994. The judgment incorporates a marital dissolution agreement ("MDA"), which vests the parties with joint legal custody of Ernie and designates Mother as primary residential custodian. Approximately 13 months after the final judgment was entered, Father filed the subject petition. Prior to the hearing on the

parties' competing positions, the trial court ordered Dr. John Kandilakis, a clinical psychologist, to conduct a custody evaluation. Dr. Kandilakis noted in his initial evaluation "that it is impossible for these two parents to be together in the presence or working on some activity involving their son." Although he recommended a continuation of joint custody, he noted that providing Ernie with a constructive experience with each parent was a "formidable task [in light of] their intense conflict and animosity with each other." In an update of the evaluation, Dr. Kandilakis again recommended joint custody but suggested that specific areas of decision-making be allocated between the parties.

Following the hearing on the parties' petitions, the trial court rendered its opinion from the bench, in which it noted that the "marital dissolution agreement was conceived in optimism and has been disastrous in its provisions for joint decision making." It further held that the "disastrous effect" of joint custody was a material change of circumstances warranting a modification of the custodial arrangement.

The court recognized that both parties had strong parenting skills and had made significant contributions to various aspects of the child's development. It therefore rejected the notion of creating "one blanket sole custodian" and instead designated each parent as the sole "custodian" of specific areas of the child's life. The court decreed that Father would be the sole medical, dental, and optical custodian for the child, and that Mother could exercise authority in these areas only in a case of emergency. The court designated Mother as the sole psychological and psychiatric custodian. It further held that all appointments, examinations, and procedures scheduled by each parent in their respective "areas" should be accomplished during their respective co-parenting times. The court designated Mother as the sole educational custodian and decreed that, with the exception of certain school meetings, the parties could visit the school only (1) when invited by the school and (2) only during the time that the child is residing with the parent. The parties were left as joint custodians of the child's religious upbringing. Mother was designated as athletic custodian, and the court held that Father was free to ignore any athletic events scheduled during his co-parenting time. Finally, Mother was designated as sole dietary custodian and was given the authority to establish a list of allowed and prohibited foods for the child while he resides with Father. The court decreed that if Father failed to follow this dietary regimen, his co-parenting time could be reduced.

Because the trial court found both parties to be "strong parent[s]," the court also adjusted the amount of time that the child spends with each parent. The court found that the parents should each have "significant time" with the child. It accordingly increased Father's co-parenting time to seven days out of every 21 days. In doing so, the court noted that Dr. Kandilakis had recommended that Father should be designated as "enrichment custodian." The court declined to create such a position and instead increased Father's time so that he could "continue the good work that he does with the boy." The court also decreed that, absent a further hearing, this co-parenting schedule would continue for the next five years, at which time the parents would share equal parenting time on a two-week rotating schedule.

II.

A trial court has broad discretion is determining matters of custody and visitation. ***Parker v. Parker,*** 986 S.W.2d 557, 563 (Tenn. 1999); ***Gaskill v. Gaskill,*** 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Such determinations are factually driven and involve a consideration of multiple factors. ***Adelsperger v. Adelsperger,*** 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Our review is *de novo* upon the record of the proceedings below; however, the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also* ***Hass v. Knighton,*** 676 S.W.2d 554, 555 (Tenn. 1984). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. ***Jahn v. Jahn,*** 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

On this appeal, we must determine if the trial court abused its discretion in crafting a new custody decree. We addressed the abuse of discretion standard in the case of ***BIF, a Div. of Gen. Signals Controls, Inc. v. Service Constr. Co., Inc.***, C/A No. 87-136-II, 1988 WL 72409, at *2-*3 (Tenn. Ct. App. M.S., filed July 13, 1988):

> The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.
>
> Appellate courts have the task of articulating the boundaries of the permissible range of the trial court's options. When the courts refer to an abuse of discretion, "[t]hey are simply saying that either the discretion reposed in the lower court judge was not exercised in conformity with applicable guidelines or the decision was plainly against the logic and effect of the facts before the court."
>
> Discretionary decisions must take applicable legal principles into account. If the trial court misconstrues or misapplies the law, its discretion lacks the necessary legal foundation and becomes an abuse of discretion. Accordingly, "abuse of discretion" may connote an error of law, an error of fact, or an error in the substance or form of the trial court's order.
>
> Appellate courts' deference to trial courts' "discretionary" decisions should not promote result-oriented opinions or seemingly irreconcilable precedents. The law's need for consistency, predictability, and reliability requires the elimination of apparently whimsical authority on both the trial and appellate levels. In order to

ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.

(Citations omitted).

## III.

While the parties disagree as to "why" the joint custody arrangement proved to be unworkable, it is essentially undisputed that problems arose in its implementation. Given the parties' difficulty in cooperating with each other, and the negative effects that this conflict has had on the child, the trial court was correct to alter the custodial provisions of the divorce judgment. We must determine, however, whether the new arrangement crafted by the trial court is in the best interest of the child. In a child custody case, the welfare and best interest of the child are "the paramount concerns." *Malone v. Malone,* 842 S.W.2d 621, 622 (Tenn. Ct. App. 1992). Although the parents' rights, desires, and interests are secondary, they "cannot be ignored and must be weighed in the balance when a court makes a decision that will affect the parent/child relationship." *Neely v. Neely,* 737 S.W.2d 539, 542 (Tenn. Ct. App. 1987). However, "when the parents remain at odds, the best interests of the child may require some limitations on the rights and interests of either or both of the parents." *Id.* at 543.

We do not find that the evidence preponderates against the trial court's finding that allocating the decision-making authority between the parents would be in the best interest of the child. In doing so, the court recognized that, although the parties are unable to effectively cooperate with each other, they both contribute significantly to the child's development and well-being. It thus attempted to maximize the involvement of each parent while at the same time minimizing the interaction between them. We find that the trial court did not abuse its discretion in fashioning this custodial arrangement.

Mother contends that she should have been given decision-making authority in the area of the child's health. She also argues that the trial court erred in failing to require Father to cooperate with her on issues pertaining to the areas of decision-making authority awarded to her.

We cannot say that the trial court abused its discretion in giving Father authority in the area of the child's health. As for Mother's second argument, the evidence preponderates that the parties had difficulty cooperating with each other under the joint custody arrangement. The trial court clearly desired to avoid fashioning a custodial scheme where the success of the arrangement would depend on the parents' cooperation. Although it would certainly be in the child's best interest for the parents to cooperate in scheduling the child's activities and appointments, the evidence reflects that the parents have not been able to work together in the past. Therefore, the trial court did not

-4-

abuse its discretion in failing to require such cooperation in the new custodial scheme.

## IV.

Mother also appeals the increase of co-parenting time awarded to Father and the trial court's decision that in five years time, the parties' co-parenting time will become equal. We do not find that the evidence preponderates against the trial court's finding that Father's co-parenting time should be increased to seven days out of every 21 days. Furthermore, the evidence does not preponderate against the trial court's determination that equal co-parenting time five years from now will be in the best interest of the child. Mother argues that the facts do not support a "change of custody" in five years. Mother misconstrues the trial court's holding. The court ordered that, absent a further hearing, the parties' co-parenting time would become equal after five years. This is not a prospective change of *custody*, but rather an increase of the *time* that Father will have as a co-parent in the future. We find no abuse of the trial court's discretion on this issue.

## V.

Mother seeks attorney's fees for the hearing below and for this appeal. The award of attorney's fees "is in the sound discretion of the trial court." ***Richardson v. Richardson,*** 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). In denying Mother an award of attorney's fees, the court noted that "[e]ach side has merit, and we see no justification in disproportionately distributing either the costs or the cost of representation." We affirm the trial court's decision on this issue. We further find that this is not an appropriate case for attorney's fees on appeal.

## VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded for enforcement of the judgment and collection of costs assessed below, all pursuant to applicable law.