# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 2, 2002 Session

## BEN THOMAS HOUSTON v. MICHELE HOUSTON

### A Direct Appeal from the Circuit Court for Davidson County
### No. 90D-967      The Honorable Muriel Robinson, Judge

### No. M2001-02538-COA-R3-CV - Filed April 19, 2002

In this post-divorce proceeding, the appellant, Ben Thomas Houston (hereinafter "Father"), filed a petition for modification of child support. The trial court increased Father's child support obligation and awarded the appellee, Michelle Houston (hereinafter "Mother"), attorney's fees. Father appeals. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David E. Danner, Nashville, For Appellant, Ben Thomas Houston

Phillip Robinson, Nashville, For Appellee, Michele Houston

#### OPINION

The parties were divorced by decree entered August 2, 1990, wherein the parties were granted joint custody of their minor child, and Father was ordered to pay child support of $225.00 per month and to provide major medical insurance for the child. By order entered April 18, 1996, the court increased the child support to $69.77 per week, plus $16.98 per week for medical insurance premiums, totaling $86.75 per week. The order reflects that subsequent to the original decree of divorce, sole custody of the child had been awarded to Mother.[1]

---

[1] The order reflects the trial court's concern with Father's activities regarding custody and child support and illustrates his persistent evasiveness about his income which is equally apparent in the record before this Court on the present appeal. We quote a part of the Order:

> That concerning the Counter-Petition for review of child support, the Court finds that the parties have a history of litigation since their 1990 Final Decree of Divorce, which originally provided for a joint custody arrangement.

(continued...)

By petition filed April 21, 1997 and by an amended petition filed June 26, 1997, Father seeks a reduction in his child support on the grounds stated:

>  That since the entry of the last Order of Support, there has been a significant variance between the Tennessee Child Support guidelines and the amount of child support currently ordered, such that a modification in child support is justified.

On July 25, 1997, Mother filed an "Answer to Petition and Amended Petition and Counter-Petition" denying the material allegations of the Father's petition and amended petition concerning child support. Mother includes in her answer an affirmative defense which provides in pertinent part:

>  As an affirmative defense to the Petitioner's request that the child support in this cause be modified, Respondent would show that the Petitioner is a healthy and able-bodied man well able to work and generate adequate income for his support and that of his minor child. That the Petitioner has consistently been under-employed. That the Respondent currently provides the major medical insurance on the parties' minor child. That in addition, the Petitioner has set upon a course of conduct designed to legally harass your Respondent and to

---

[1](...continued)

That the joint custody arrangement did not work and there have been numerous Petitions filed on behalf of Mr. Houston necessitating attorney's fees and court costs, most of which he had not paid. That he has filed an appeal which was not perfected.

The Court finds that the Petitioner is set upon a course to consistently litigate custody of this child to the detriment of the parties' financial situation, and more particularly to the detriment of the child.

That the Petitioner comes before the Court claiming to be financially unstable. That he has admitted that he does not pay his outstanding bills. That he has not paid prior attorney's fees with the exception of one that was awarded earlier on in this cause. That he incurs debts that he says he cannot pay, yet continues to consistently litigate this matter. That he had defaulted on school loans and hospital bills. That he is extremely evasive about his income and his earning ability. That he will not answer pertinent questions as to his ability to pay child support or his ability to earn income under oath. That the Court concludes that his testimony is not credible and he will be deemed an incredible witness. That the Court finds from the proof offered that the Petitioner, Ben Thomas Houston, is an able-bodied individual; that he totally controls his hours of work and has other sources of income. That based on the facts, the Court could impute to Mr. Houston income in the amount of $25,000.00 per year if he chose to work a regular job. That the Court finds that based on the foregoing, an increase in child support is necessary.

cause her to expend vast sums in attorney's fees defending herself from the Petitions filed by the Petitioner. That despite the fact that she has been awarded $5,635.00 in judgments for attorney's fees, she has not been able to collect said fees and has been forced to pay these fees herself. These expenses were all generated for the benefit of the parties' minor child. Respondent would request that in any review of child support, the Court take into consideration the foregoing and set the support at an appropriate level, taking into consideration the best interests of the parties' minor child and the Petitioner's ability to earn income.

On June 6, 2001, Mother filed an "Amended and Supplemental Counter-Petition" to increase child support. This petition provides in pertinent part:

> Counter-Petitioner would show that the court has not reviewed child support in this cause for at least three years. Further, Counter-Petitioner has reason to believe that the Counter-Respondent has experienced an increase in income and that there currently exists at least a 15% variance between what he is currently ordered to pay and what he should pay under the Tennessee State Child Support Guidelines based on his current income. She would therefore request that the Court review the child support in this cause and, if justified, award her an increase in child support consistent with the current State Guidelines.

A non-jury trial was held on August 20, 2001, and by order filed on September 17, 2001, the trial court increased Father's child support obligation and awarded Mother her attorney's fees. The order of the trial court provides in pertinent part:

> This cause came on to be heard on the 20th day of August, 2001, before the Honorable Muriel Robinson, Judge of the Fourth Circuit Court for Davidson County, Tennessee, upon the original and Amended Petition of BEN THOMAS HOUSTON, Answer, Counter-Petition and Amended Counter-Petition of Respondent, MICHELE HOUSTON, testimony of the parties in open Court, exhibits submitted to the Court for review, statement of counsel and the entire record, from all of which the Court finds as follows:
>
> That the Petitioner, BEN THOMAS HOUSTON, is not a credible witness.

-3-

That the Court finds Counter-Respondent, BEN THOMAS HOUSTON, to be in willful civil contempt of the orders of this Court, and Counter-Petitioner, MICHELE HOUSTON, shall be awarded a judgment against BEN THOMAS HOUSTON in the amount of $873.00, which figure represents back child support arrearages. Said child support arrearage judgment shall be paid on or before October 22, 2001, through the Office of the Circuit Court Clerk, plus the Clerk's commission of $43.65, for a total arrearage payment of $916.65.

That the Counter-Petitioner's Counter-Petition for an increase in support has been sustained by the evidence in this cause, and BEN THOMAS HOUSTON shall pay the sum of $537.00 per month in child support, plus insurance premiums for health insurance on the minor child in the amount of $73.01 per month, for a total monthly payment of $610.01 to be paid monthly, with the first payment to be due and payable on the 5th day of September, 2001, and the 5th day of each month thereafter, all to be paid through the Office of the Circuit Court Clerk, plus the clerk's commission of $30.50, for a total monthly payment of $640.51

\* \* \*

That Respondent MICHELE HOUSTON shall be awarded a portion of her reasonable attorney's fees and, therefore, attorney Phillip Robinson is awarded a judgment against BEN THOMAS HOUSTON in the amount of $5,000, representing a portion of Respondent's reasonable attorney's fees.

Father appeals the order of the trial court and raises the following three (3) issues as stated in his brief:

I. Whether the Circuit Court erred in increasing child support based on gross deposits to a business account.

II. Whether the Circuit Court erred in awarding attorney fees with no finding of financial need nor analysis of value of legal services.

III. Whether the Circuit Court erred in awarding major medical insurance when the record did not support the cost to appellee.

-4-

Mother presents the issue of whether she should be awarded attorney's fees for a frivolous appeal.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We will now address issue one (1).

Father asserts in his brief that the trial court modified child support based on gross deposits to a business account without making deductions for business operations, FICA, Medicare and withholding tax pursuant to the child support guidelines and that such calculation is clear error. We disagree. The trial court increased Father's child support obligation to $537.00 per month based on the current child support guidelines and Father's own testimony that although he had no income according to his 2000 income tax return, he made deposits in the amount of $39,960 into his business account which he uses to pay for personal expenses. Father's testimony on cross-examination provides in pertinent part:

\* \* \*

> THE COURT: The expenses you pay and the income you show, based on your tax returns, are very suspect, which leads me to believe that you're not being truthful with the Internal Revenue Service. That's what this proof shows based on your testimony, which comes solely from you, the purchases that you made –
>
> A. What purchases have I made?
>
> THE COURT: Well, you have two automobiles that are paid for.
>
> A. I have two automobiles –
>
> THE COURT: You pay rent. You say you're current with your child support, and then you add all that up, it doesn't reflect the numbers that you've sworn to the government are your financial situation.
>
> A. It does reflect – the vehicles I have are vehicles that was a gift to the ministry. I didn't pay anything for those vehicles. So, therefore, I think before Mr. Robinson can try to throw bricks at a church or at a ministry or 23rd –
>
> THE COURT: Nobody's throwing bricks.

\* \* \*

Q. You don't have any other income other than what you report on your taxes, do you, sir?

A. Correct.

Q. Yet you've already testified that you've been paying your mom, since 1998, $300 a month on rent, correct?

A. Correct.

Q. An you've been paying my client $375 a month, if you're current on your child support, correct?

A. Correct.

Q. Now you've moved into another place and it's more expensive than your mom's house, isn't it?

A. I have to have a place to live.

Q. I'm not criticizing for that. The question is, where is this money coming from and why isn't it being properly reported, Mr. Houston?

A. It is being properly reported.

Q. Let's go to 1999. Is this your 1999 tax return?

A. And those numbers are losses that it has taken to operate the business.

THE COURT: So you're taking cash out of the business for your salaries and your expenses and then reporting a loss to the government?

A. No.

THE COURT: You're drawing everything out of your business? That's what makes sense.

-6-

A. I take what – how I paid then is I take a draw and I pay my bills. I don't cheat on my – on my taxes, which is what Mr. Robinson is saying, and I'm offended and I'm hurt, and I wish you would say something to him about that.

THE COURT: Well, that's cross-examination. That's what lawyers do, so don't get your feelings hurt.

\* \* \*

Q. Let's look at the next year. This is your 2000 tax return, correct?

A. Yes.

Q. Let's look at the first page. This page, 2000, doesn't show any income except $88. You only took a draw of $88 in the year 2000, Mr. Houston? Is that what you're saying?

A. No.

Q. Where did you get your money, just drew it out of the ministry as you needed it?

A. I take a draw to pay my bills.

Q. Are you saying you only took $88 out of the business?

A. No.

Q. How much did you take out?

A. Mr. Robinson, you're badgering me.

THE COURT: He's not badgering. He's cross-examining you, so answer the question.

Q. How much did you take out? How much money did you –

A. I don't know. I don't know.

Q. You don't know?

A. I don't know.

Q. But you don't report it on here as income, do you, sir?

A. Well, we report everything that we do.

Q. But it's not listed on your personal tax returns as income, is it?

A. We report everything that we do.

Q. Listen to my question.

THE COURT: Answer the question.

Q. Did you report it on your personal tax returns the money you took out as a draw?

A. I reported it to my accountant and my accountant does all of our paperwork.

Q. Did you look this over?

A. Yes.

Q. And you thought it was correct?

A. Yes.

Q. Did you not notice it didn't show any income to you this year except for $88?

A. Well, I didn't have any income.

Q. Well, how did you pay $375 in child support if you're current? How did you pay $300 a month to your mother? Right there is nearly $700 a month. How did you do those things if you didn't have any income, Mr. Houston?

A. Well, I personally –

THE COURT: It looks like you're paying expenses out of your company that aren't authorized by the Internal Revenue Service for your own support. That's exactly what those returns reflect. So you

better have a talk with your accountant, because you might be audited.

Q. Mr. Houston, based on that, because I kind of thought that's what it looked like, too, I did get some bank statements from you. Houston Productions Incorporated d/b/a 23rd Psalm Café, is that your business?

A. Yes.

Q. So we have these, and you were good enough to provide me with a copy of these, and I'm going to pass one to the court. This first one, if we look, actually, it's right here, the statement period 6/1/2001, this is the most recent statement you showed me. I went back, Mr. Houston, showing deposits in that month, that 30-day period, you deposited 1539 into your business account, didn't you?

A. Yes.

* * *

Q. Mr. Houston, if my math is right, from April of 2001 back to May of 2000, taking a 12-month period there, those deposits that we just went over total $39,960. Do you dispute those figures, sir?

A. No.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

Modification of an existing child support order is controlled by Tenn. Code Ann. § 36-5-101(a)(1) (2001), which states, in pertinent part:

In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from

-9-

the guidelines and the circumstances which cause the deviation have not changed.

"For the purposes of defining a significant variance between the guideline amount and the current support order pursuant to T.C.A. § 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month."   Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1994). However, "[s]uch variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed."   *Id.*

Therefore, after a review of the record, we find that the evidence in this case does not preponderate against the trial court's finding that the Father's child support obligation should be increased to $537.00 per month based on the proof concerning Father's income compared to the current child support guidelines.

We will now address issue three (3).

Father argues that the trial court's award of $73.01 per month in health insurance was ordered despite the fact that Mother presented no proof of such cost, and such is clear error. We disagree. In the trial court's previous order dated April 18, 1996, the trial court ordered, based on the proof, that the Father reimburse the Mother the sum of $16.98 per week ($73.01 per month) which represents the cost of health insurance premiums paid by the Mother on the parties' minor child. Therefore, the Mother did not have to present any evidence of those expenses during the August 20, 2001 hearing, and the trial court did not modify the previous order requiring the Father to reimburse the Mother for the health insurance on the parties' minor child.

In issue two (2), Father argues that the trial court erred in awarding Mr. Phillip Robinson, the Mother's attorney, a fee of $5,000 because the attorney fee affidavit was not itemized; the Mother was financially able to pay her own legal fees; and the trial court made no finding of Mother's inability to pay. We disagree. In *Huntley v. Huntley*, 61 S.W.3d 329 (Tenn. Ct. App. 2001), this Court said:

> In child support modification cases, Tenn. Code Ann. 36-5-103(c), gives trial courts the power to award "reasonable attorney fees . . . ." The award of attorneys' fees is within the trial court's discretion. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Unless it "'affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining,'" the trial court's exercise of discretion will not be reversed on appeal. *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999).

*Id*. at 341.  As in ***Huntley***, we find no abuse of discretion by the trial court with respect to this issue.

Last, Mother seeks to have this court declare Husband's appeal frivolous, but we decline this request.  We do not view this as a frivolous appeal and the motion is denied.

Accordingly, the order of the trial court is affirmed.  Costs of this appeal are assessed against the appellant, Ben Thomas Houston, and his surety.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.