IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2003 Session

## MARK PIRTLE CHEVROLET, INC., ET AL. v. CELEBRATION NISSAN, INC., ET AL.

Appeal from the Chancery Court for Bedford County
No. 22,210     J. B. Cox, Judge

No. M2002-00554-COA-R3-CV - Filed May 9, 2003

This case involved claims and counter-claims for breach of contract on the sale of an automobile dealership. After a hearing, the trial court awarded the plaintiffs damages for most of their claims. Since the defendants did not file a timely notice of appeal, we cannot consider arguments about the court's Final Order. However, the plaintiff filed a Rule 60 motion to clarify one paragraph of the Final Order. The trial court granted the motion, and modified the order to specify that the defendant was to pay the plaintiff $49,000 for certain cars that had been the subjects of a dispute. The defendant appealed the trial court's action. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and MARIETTA M. SHIPLEY, SP. J., joined.

Daryl M. South, Murfreesboro, Tennessee, for the appellants, Celebration Nissan, Inc., Randy Roberts, Rebecca Roberts and William P. Bradbury.

David W. Kious, Murfreesboro, Tennessee, for the appellees, Mark Pirtle Chevrolet, Inc. and Mark A. Pirtle.

## OPINION

### I. THE SALE OF AN AUTO DEALERSHIP

On September 17, 1997, the sole owner of Mark Pirtle Chevrolet-Nissan in Shelbyville sold the Nissan portion of the dealership to Randy Roberts, his sales manager, and to Mr. Roberts' wife. Mr. Roberts subsequently renamed the dealership Celebration Nissan. The assets to be transferred under the contract of sale included the real property upon which the dealership was situated, an

inventory of Nissan parts, and the fixed assets listed in an attachment to the contract. The agreement recited a purchase price of $750,000.[1]

The written contract did not mention the inventory of cars on the dealership lot, but Mr. Pirtle claimed that there was an oral contract for Mr. Roberts to take out his own floorplan financing on the new Nissan vehicles with Nissan Motor Acceptance Corporation, thereby releasing Pirtle from its own obligations for those vehicles. He also claimed that used cars were not included in the deal.

Since two dealers are not permitted to operate out of the same premises, Mr. Pirtle had to move the unsold assets to another piece of property he had developed for his Chevrolet dealership. When he did so, he took eight "new" Nissan vehicles to the new location, because Mr. Roberts apparently declined to purchase them. Twenty-six used vehicles were left on Celebration Nissan's lot because Nissan Motor Acceptance Corporation directed the parties not to move the cars from their physical location. Celebration subsequently sold all the used vehicles, while Pirtle sold five of the new ones.

Disputes arose between the parties on a number of issues. The only issue relevant for our discussion involves the new vehicles. The proof showed that prior to the final division of the dealership assets, those vehicles were reported to the manufacturer as sold, or, in the language of car dealers, "R.D.R'd" (for retail delivery reporting), even though they had not actually been sold.

The significance of this fact is that once a vehicle has been R.D.R'd, the manufacturer sends an incentive payment to the dealer. The payments in this case went to Pirtle. Notification of sale also starts the clock on the manufacturer's five year new car warranties, thus reducing the value of the car to prospective buyers, who would be unable to benefit from the full warranty. The defendant did not want the R.D.R'd cars, and claimed that those cars were excluded from the oral agreement. Pirtle denied that this was so.

## II. PROCEEDINGS IN THE TRIAL COURT

Mark Pirtle Chevrolet and Mark Pirtle individually filed a Complaint against Celebration Nissan, and Randy and Rebecca Roberts in the Chancery Court of Bedford County on December 15, 1998, alleging breach of contract, breach of trust, fraud, and misappropriation of assets. Pirtle also named William Bradbury, his former general manager and a current employee of Celebration Nissan, as a defendant. But since Mr. Bradbury is not directly involved in the appeal of this case, we need not discuss his role.

---

[1] On October 24, the parties entered into an amended contract that recited a sales price of $600,000. Apparently, the parties believed that the lower price on the document would accelerate Nissan's approval of the transfer of the dealership franchise.

The defendants filed a timely answer which denied any improper conduct on their part, and a counter-complaint which alleged that the plaintiffs themselves had been guilty of breach of contract and fraud. The plaintiffs' answer to the counter-claim denied the defendants' allegations, and contended that the defendants should be barred from any recovery under the doctrine of unclean hands.

The two-day hearing of this case began on February 7, 2001. Eleven witnesses testified. At the conclusion of the proof, the chancellor announced from the bench that neither of the parties had committed fraud, but that both had breached their fiduciary duties to the other in certain respects. The court subsequently filed a detailed order, which allocated disputed property between the parties, and awarded damages to the plaintiff on many of the matters in dispute. Although both parties were awarded some of what they asked for, Pirtle was the prevailing party on most issues.

For example, the court found that the used cars were not included in the contract, and therefore that they should have been retained by Mark Pirtle Chevrolet. The court ordered Roberts and Celebration to pay Pirtle $250 for lost profits on each of the used cars it sold.

Paragraph three of the court's order stated that "[t]he following new vehicles should have been purchased by Roberts as part of the Contract," and then listed the model and serial numbers of eight vehicles. The court noted that all but three of them had since been sold.[2] The court ordered Roberts to pay Pirtle $32,000 for the floor planning and insurance expenses it incurred on the cars it had sold, a sum that included an adjustment for the incentive payments Pirtle had already received on them. The court also ordered Roberts to "take possession of the three remaining vehicles aforesaid."

### III. POST-TRIAL PROCEEDINGS

The trial court's Final Order was filed on November 1, 2001. The defendants did not file a notice of appeal within thirty days, as is required for a party to retain his right to appellate review. *See* Tenn. R. App. P. 3. However, on January 7, 2002, the plaintiff filed a Rule 60 motion, asking the chancellor to clarify the third paragraph of the order.

Pirtle asked the court "to assist in the interpretation [of paragraph 3] and if necessary, to correct any clerical mistake, errors arising out of oversight or omission regarding the order." *See* Tenn. R. Civ. P. 60.01. Pirtle argued that while the court had correctly ordered Roberts to take possession of the three unsold cars, it had forgotten to order Roberts to pay for them. Roberts did not file a response to the motion.

After a hearing, the trial court granted Pirtle's motion. In an order dated February 6, 2002, the court modified paragraph three to compel payment by Roberts to Pirtle of $49,000 for the three

---

[2]The court's order listed eight vehicles in its order, and declared that all but three of them had been sold, but also referred to "the seven vehicles sold." Pirtle's attorney, who drafted the order, admitted that the mistake was his.

unsold vehicles. Roberts filed a timely appeal of this order. Pirtle then filed a motion to dismiss the appeal, arguing that the appellant's failure to file a timely notice of appeal of the trial court's Final Order precluded any appellate review of this case whatsoever.

After considering the appellee's motion, this court determined that although the appellants could not challenge the trial court's order of November 1, 2001, they were entitled to review of the trial court's order of February 6, 2002. We therefore instructed them to confine their arguments to the matter determined in the later order.

## IV. ISSUES ON APPEAL

In oral argument, the appellants' attorney explained that the reason he did not file an appeal of the trial court's Final Order was that he understood the order as giving the appellants the three unsold vehicles as an equitable set-off for the $32,000 it had to pay for the others. It is true that the order of November 1 does not make any mention of payment for the cars that Pirtle was ordered to return to Celebration Nissan. But neither does it say that for equitable reasons Celebration need not pay for them.

While the trial court's order may be ambiguous, the appellant seems to be asking us to find that the trial court misinterpreted the meaning of its own order. It appears to us, however, that the trial judge is in the best position to interpret his own orders, *Richardson v. Richardson,* 969 S.W.2d 931 (Tenn. Ct. App. 1997), *Stidham v. Fickle Heirs*, 643 S.W.2d 324 (Tenn. 1982), and we cannot say that he misunderstood his own intentions.

However, insofar as the trial court modified its earlier order rather than merely clarifying it, the appellant is entitled to be heard on the correctness of the modification. Appellant's sole argument on that issue is that because Pirtle falsely reported that the cars had been sold, he was not entitled to any relief at all, by virtue of the doctrine of unclean hands.

The appellants claimed that Mark Pirtle had intimidated and coerced his employees into making false reports in order to obtain incentive checks and free trips from the manufacturer. However, Mr. Pirtle testified that he had little involvement in the day-to-day operations of the dealership, and that he was not involved in the RDR scheme. A former employee of the dealership testified that Mr. Roberts, Mr. Bradbury and another employee would gather at the end of the month to think up names and addresses for fictitious buyers, and then direct a secretary to report the sales over the computer.

We note that in his ruling from the bench, the chancellor stated that he was "really tempted by the unclean hands doctrine." But he decided not to apply it, choosing instead to enforce the oral contract for the sale of the new cars, with an offset for the incentive payments Pirtle received.

The question of whether or not to apply an equitable remedy is usually held to be within the sound discretion of the trial court. *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228 (Tenn. Ct.

App. 1976). Thus, the question we must answer in this case is whether the chancellor abused his discretion by enforcing the contract, notwithstanding the unclean hands of the party urging enforcement.

We note that the chancellor did not allow Pirtle to retain the incentive payments, but used them as an offset against Roberts' obligation. Further, as noted above, there was some evidence that both parties were involved in the RDR scheme. Also, even though the scheme may have ultimately operated to the detriment of Roberts, the false reports were made to a third party (Nissan Motor Acceptance Corporation) with the apparent knowledge of the defendants. Finally, the court found that none of the parties were guilty of actual fraud. In light of all these factors, we find that the trial court did not abuse its discretion in declining to apply the unclean hands doctrine to Pirtle.

## V.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Bedford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, Randy Roberts and Celebration Nissan.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.